PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LUMUMBA KENYATTA INCUMAA, a/k/a
Theodore Harrison,
            *Plaintiff-Appellant,*

v.

JONATHAN E. OZMINT, Director,
SCDC,
            *Defendant-Appellee.*

No. 04-7824

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Cameron McGowan Currie, District Judge.
(CA-03-2776-0)

Argued: September 25, 2007

Decided: October 29, 2007

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge, and
T. S. ELLIS, III, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

Dismissed as moot by published opinion. Chief Judge Williams wrote
the opinion, in which Judge Duncan and Senior Judge Ellis joined.

## COUNSEL

**ARGUED:** Robert Alexander Schwartz, ARNOLD & PORTER,
L.L.P., Washington, D.C., for Appellant. Andrew Frederick Linde-
mann, DAVIDSON, MORRISON & LINDEMANN, P.A., Columbia,

S.C., for Appellee. **ON BRIEF:** Justin S. Antonipillai, C. Ezekiel Ross, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellant.

---

**OPINION**

WILLIAMS, Chief Judge:

In 2003, Lumumba Kenyatta Incumaa, then an inmate in the South Carolina Department of Corrections ("SCDC") Maximum Security Unit ("MSU"), brought this action under 42 U.S.C.A. § 1983 (West 2003), alleging that an SCDC policy barring MSU inmates from receiving publications via the mail violated his First Amendment rights. Incumaa sought declaratory relief and an injunction against enforcement of the publications ban, but he did not pursue money damages. The district court granted summary judgment in favor of the SCDC, and Incumaa appealed.

In 2005, after Incumaa filed his appeal in this case, the SCDC released him from the MSU, and he has not been returned to its confines in over two years. Thus, the MSU publications ban no longer applies to Incumaa, and given that an inmate must "earn" assignment to the MSU through violent behavior or noncompliance with SCDC prison policies, there is no indication that the MSU ban will ever apply to him again, save some serious misstep on his part. Accordingly, we conclude that Incumaa no longer stands to benefit from the declaratory and injunctive relief he seeks in his complaint. We therefore dismiss the appeal as moot.

I.

A.

Incumaa is serving a life sentence for murder in the South Carolina prison system. In April 1995, the SCDC placed Incumaa in the MSU at Kirkland Correctional Institution ("Kirkland") after he participated

in a riot at Broad River Correctional Institution during which he took several prison employees hostage and assaulted them.[1]

The SCDC maintains two specialized units for difficult inmates: the MSU and the Special Management Unit ("SMU"). The SCDC houses its most dangerous and recalcitrant inmates in the MSU. The SMU is designed for prisoners who are in need of greater monitoring and supervision than those in the general population but who do not warrant placement in the MSU.

No inmate is assigned to the MSU "from the street." (Appellee's Br. at 3.) Rather, placement in the MSU is based exclusively on an inmate's conduct while incarcerated. An inmate must commit some violent act, engage in some criminal behavior, or otherwise pose a risk to prison safety to "earn" assignment to the MSU. The most common reasons for assignment to the MSU are violent escape attempts, aggravated assault on staff or other inmates, murder or attempted murder, violent participation in a riot, hostage-taking, a history of violent behavior, or circumstances that pose an extraordinary threat to operation of the institution. These reasons are not exhaustive; other types of misbehavior can result in assignment to the MSU. Before admitting an inmate to the MSU, the SCDC gives the inmate a chance to respond at a formal hearing before the MSU Review Board.

The SCDC classifies each MSU inmate as a Level I, Level II, or

---

[1]A Richland County, South Carolina grand jury subsequently indicted Incumaa on three counts of hostage-taking and two counts of assault and battery with intent to kill in relation to his involvement in the prison riot. Incumaa pleaded guilty to the charges, and the state court sentenced him to concurrent 20-year terms on each of the assault-and-battery counts and 20-year terms for each of the hostage-taking counts, consecutive to the life sentence being served and to each other. A post-conviction relief ("PCR") court vacated Incumaa's riot-related convictions and remanded for a new trial. The PCR court concluded that Incumaa would have gone to trial had it not been for his counsel's ineffective assistance in incorrectly representing to him that he would not lose his eligibility for parole as a result of the guilty pleas.

Although his riot-related convictions were vacated, Incumaa nevertheless concedes his involvement in the prison riot.

Level III inmate. Level I inmates face the most severe restrictions; Level II inmates retain more privileges than Level I inmates; and Level III inmates enjoy the maximum privileges available in the MSU. Even at Level III status, however, an MSU inmate is greatly restrained in activity as compared to his general population counterparts, for all three levels of MSU seriously restrict an inmate's ordinary prison privileges. For instance, MSU inmates may not participate in prison employment, education, or other organized activity; are confined to their cells twenty-three hours a day during the week and twenty-four hours a day on the weekend; and are severely limited in the amount and kind of personal property that they may keep in their cells.

An inmate's movement within the MSU classification system is not solely dependent on the number of disciplinary infractions the inmate commits. It also depends on the inmate's conformity to the standards set out by MSU officials, his commitment to self-improvement actions, his relationships with staff, the results of daily cell inspections, and his personal grooming and appearance. The minimum term of confinement in the MSU is eighteen months, at which point the SCDC evaluates the inmate's behavior to determine whether relocation to the SMU is warranted. If an inmate believes that his release from the MSU has been wrongfully denied, he may seek review of the decision by the SCDC Director. The Director's decision is subject to immediate judicial review by an administrative law judge and then, if necessary, by the South Carolina Court of Appeals and South Carolina Supreme Court.

### B.

On January 1, 2002, the SCDC adopted Policy OP-22.11 to govern the MSU. Among many other things, Policy OP-22.11 restricts an MSU inmate from receiving magazines, books, and other publications by mail. The restriction does not apply to magazine or periodical subscriptions paid for by the inmate before assignment to the MSU; the inmate may continue to receive these materials until the expiration of the subscription(s). But once these pre-MSU subscriptions expire, they cannot be renewed, and the MSU inmate may not receive any more magazines, books, or publications — whether paid for or free — by mail.

The publications ban does not deprive MSU inmates of all reading materials. MSU prison officials make books and periodicals from the Kirkland library available to the inmates by way of a book cart. Policy OP-22.11 provides that a Level I inmate may possess one paperback book or periodical at a time and may advance to possession of as many as three paperback books or periodicals at a time at Level III. In addition to these materials, an inmate may always possess the primary source book for his religion (Bible, Qur'an, etc.).

On August 29, 2003, Incumaa, then a nearly eight-year resident of the MSU and a Level III inmate, brought the present § 1983 action in the District of South Carolina alleging that Policy OP-22.11's publications ban violated his First Amendment right to receive information and ideas. Incumaa sought declaratory relief and an injunction against enforcement of the ban, but he did not seek any money damages. Incumaa styled his challenge to the MSU publications ban as an as-applied challenge.

On March 25, 2004, the SCDC filed a motion for summary judgment. Based on its agreement with a magistrate judge's conclusion that "[i]t is not a violation of [Incumaa's] constitutional rights to not be allowed to subscribe to and receive any magazine or periodical he desires," (J.A. at 213),[2] the district court granted summary judgment to the SCDC on October 24, 2004.[3] Incumaa timely appealed, and on April 15, 2005, we appointed counsel to handle his appeal.

Incumaa filed his opening appellate brief on June 15, 2005. Shortly thereafter, Kirkland prison officials released Incumaa from the MSU, and on August 2, 2005, the SCDC moved this Court to suspend the

---

[2]Citations to "(J.A. at ___.)" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[3]The magistrate judge's recommendation references a case in which we previously upheld Policy OP-22.11's publications ban against a First Amendment challenge, albeit in an unpublished opinion. *See Corey v. Reich, et al.*, 103 F. App'x 753 (4th Cir. 2004) (unpublished), *cert. denied*, 544 U.S. 924 (2005).

Pursuant to D.S.C.R. 73.02(B)(2)(d), the clerk of the district court refers to a magistrate judge "[a]ll pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983." *Id.*

briefing order and dismiss this case as moot. Incumaa opposed the motion.

On February 15, 2006, the SCDC withdrew its motion to dismiss the case as moot. The SCDC informed this Court that Incumaa was likely to be transferred to the SMU and that the SCDC had amended Policy OP-22.12, the SCDC policy setting forth the policies and procedures for the SMU, to include similar restrictions on the receipt by mail of books, publications, and magazines as are contained in MSU Policy OP-22.11. Shortly thereafter, the SCDC transferred Incumaa to the SMU.

Around that time, the U.S. Supreme Court granted certiorari in *Beard v. Banks*, 126 S. Ct. 2572 (2006), a case in which a Pennsylvania inmate, on behalf of himself and similarly situated inmates, brought a First Amendment challenge to a Pennsylvania Department of Corrections policy restricting access to newspapers, magazines, and photographs by inmates placed in the most restrictive level of the Commonwealth's long-term segregation unit. On February 15, 2006, in the same filing in which it withdrew its motion to dismiss, the SCDC moved to stay briefing in the appeal to await the decision in *Banks*. Over Incumaa's opposition, we granted the SCDC's motion to stay on March 2, 2006.

The Supreme Court decided *Banks* on June 28, 2006, upholding the Pennsylvania policy restricting inmate access to written materials in the Commonwealth's long-term segregation unit. On November 20, 2006, we lifted the stay in this case and ordered Incumaa to submit a new opening brief. According to the parties' representations at oral argument, Incumaa has not returned to the MSU since his release in June 2005 and, instead, remains housed in the SMU.

## II.

Although the SCDC previously withdrew its motion to dismiss this case as moot, it now argues that the case is indeed moot and that we are without jurisdiction to consider the merits of Incumaa's challenge to Policy OP-22.11's publications ban. In the SCDC's view, no "live" Article III case or controversy has survived to this stage in the proceedings because Incumaa is no longer housed in the MSU, and there

is no indication that he will ever be subject to the challenged policy again, absent some sufficiently recalcitrant behavior on his part. Incumaa, of course, resists the SCDC's suggestion of mootness. He argues that his challenge to Policy OP-22.11's publications ban was not mooted by his transfer out of the MSU because: (1) the SCDC can reassign him to the MSU at any time (and, according to Incumaa, on a whim); and (2) he is subject to a publications ban in the SMU that, if not identical in language, is identical in effect to the MSU ban.

The mootness question would be front and center even if the parties did not alert us to its presence, for "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks omitted). "The doctrine[ ] of mootness . . . originate[s] in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1867 (2006). Because the requirement of a continuing case or controversy stems from the Constitution, it may not be ignored for convenience's sake. *See United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920) (stating that a moot question cannot be decided, "[h]owever convenient it might be"); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[R]easonable caution is needed to be sure that mooted litigation is not pressed forward . . . solely in order to obtain reimbursement of sunk costs.").

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (stating that federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them"). Litigation may become moot during the pendency of an appeal. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed," for federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in

issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted); *see, e.g.*, *Whiting v. Krassner*, 391 F.3d 540, 545 (3d Cir. 2004)(stating that a case is moot if "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief" (internal quotation marks omitted)). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)(internal quotation marks omitted).

All agree that this case was "live" when Incumaa first brought his § 1983 action while still confined in the MSU. At that time, Incumaa could not receive books, magazines, or other publications by mail because of the operation of Policy OP-22.11, the policy he challenges in his complaint. His interest in the outcome of the litigation was more than an abstraction; if ultimately successful on his First Amendment claim, he would have been able to receive magazines, books, and other publications by mail. It is the supervening event of his release from the MSU — which, we note, occurred *after* the district court granted summary judgment to the SCDC — that puts the mootness doctrine in play.

Mootness questions often arise in cases involving inmate challenges to prison policies or conditions, and courts, including our own, have held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives. *See, e.g.*, *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (dismissing as moot a prisoner's First Amendment claim for declaratory relief after prisoner was transferred to a different prison); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993) (vacating injunctive relief ordered by district court in favor of inmate in Delaware's Maximum Security Unit ("DMSU") who had been released from the unit five months prior to trial, because after the date of the inmate's release from the DMSU, "the district court could not provide [him] with meaningful relief by entering an injunctive order respecting the MSU in which [he] no longer was incarcerated"); *Williams v. Griffin*, 952

F.2d 820, 823 (4th Cir. 1991) (holding that a prisoner transfer mooted a request for declaratory and injunctive relief). The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted. And the newly situated inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

The same remedial problems would obtain here if we were to consider the merits of Incumaa's First Amendment challenge to Policy OP-22.11's publications ban. Incumaa's challenge to the MSU policy is of the as-applied variety, but, critically, the publications ban no longer applies to him. "As applied" does not mean "as it used to apply," but rather "as it continues to apply." Now that he has progressed out of the MSU, Incumaa would no more benefit from our declaring that the publications ban was unconstitutional as it *applied* (past tense) to him and enjoining its enforcement than he would benefit from our declaring any other aspect of MSU policy (or, for that matter, any aspect of the former Alcatraz prison's policy) unconstitutional and enjoining its enforcement. Incumaa does not "continue to have a 'personal stake in the outcome'" of this case, *Lewis*, 494 U.S. at 477-78, which means that this case is no longer the "'live' controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law," *Hall v. Beals*, 396 U.S. 45, 48 (1969)(per curiam).

That Incumaa remains subject to a similar publications ban in the SMU is of no moment. Incumaa's complaint *only* challenges MSU Policy OP-22.11, not SMU Policy OP-22.12, which is unsurprising given that the SMU publications ban did not even exist at the time Incumaa brought this action. And, contrary to Incumaa's suggestion, the MSU and SMU policies are not one in the same. The operative

language in MSU Policy OP-22.11 establishing that unit's publications ban is nowhere to be found in SMU Policy OP-22.12. Indeed, the SMU publications ban is not even an explicit "ban" as it is in the MSU, but rather derives from the SMU policy's restrictions on the kinds of property an inmate in the unit may possess. More fundamentally, the MSU and SMU serve distinct purposes in the South Carolina prison system, so we must assume that the SCDC's inclusion of an explicit publications ban in the MSU policy and exclusion of such an explicit ban from the SMU policy expresses some qualitative difference between the MSU policy and the SMU policy. No matter how hard he tries, Incumaa cannot recast the MSU and SMU policies as one overarching policy.[4]

Putting aside the qualitative differences in the policies, however, there remains the problem of redressability. Given that the MSU and SMU policies are not one in the same and that there is no reasonable indication that Incumaa will ever feel the sting of the MSU policy again, it would be unconstitutional (as an advisory opinion), not to mention odd, for us to declare the *MSU* publications ban unconstitutional and enjoin its enforcement based on Incumaa's exposure to the *SMU* publications ban. Mootness has in some contexts been referred to as "the doctrine of standing set in a time frame." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980). *But see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (noting some differences between standing and mootness). There is little question that if Incumaa had brought an action in the first instance as an SMU inmate challenging the MSU policy, we would have dismissed that case for lack of standing. The result is not changed here simply because Incumaa became an SMU inmate midway through the litigation. If Incumaa wishes to challenge the SMU publications ban, he must file a new action in the district court.[5]

---

[4]We also wish to point out that the district court has never considered the SMU policy, and the court's decision below, as well as the parties' filings before the district court, focused exclusively on Policy OP-22.11's publications ban.

[5]Of course, pursuant to the Prison Litigation Reform Act, 42 U.S.C.A. § 1997e (West 2003), Incumaa must exhaust all administrative remedies before bringing any challenge in the district court to the SMU policy.

Incumaa raises two more related arguments against mootness, neither of which seems to us well taken. First, he argues that the SCDC's removal of Incumaa from the MSU did not moot this case because, put simply, the SCDC could place him back in the MSU at any time. It is true that "voluntary cessation of allegedly illegal activity does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot," *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953), but this "voluntary cessation" doctrine does not apply where "there is no reasonable expectation that the wrong will be repeated, *id.* at 633 (internal quotation marks omitted). Here, there is no indication in the record, nor was there any indication from Incumaa at oral argument, that the SCDC removed him from the MSU in an effort to avoid judicial review of Policy OP-22.11's publications ban or that his release from the MSU was the result of anything but normal operation of the review procedures used in making the determination to move an inmate out of the MSU. Indeed, we must assume, from the lack of any evidence to the contrary, that the SCDC promoted Incumaa to the SMU because *he* ceased his bad behavior. Clearly, this is not the kind of "voluntary cessation" that the exception covers. More to the point, it is clear that if Incumaa is ever returned to the MSU, it will be of his own doing, and not because the SCDC believes that the specter of litigation has passed.

Incumaa also invokes a closely related exception to the "voluntary cessation" doctrine that permits federal courts to consider disputes, although moot, that are "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652, 2663 (2007)(internal quotation marks omitted). In the absence of a class action, jurisdiction on the basis that a dispute is "capable of repetition, yet evading review" is limited to the "exceptional situation[ ]," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), in which "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks and alteration omitted). Incumaa bears the burden of demonstrating that the exception applies, *see, e.g.*, *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006), and in this instance, it is a burden that he cannot carry. Unless we are to assume that Incumaa will flout SCDC standards and codes of conduct in such a manner as to warrant

reassignment to the MSU, there is nothing in the record to support the proposition that he is likely to be subjected to the MSU publications ban again in the future. There is no evidence in the record that the SCDC arbitrarily places inmates in the MSU. Instead, assignment to the MSU is directly tied to an inmate's bad behavior, so Incumaa thus "holds the keys" to his remaining free from the unit.

For us to find the exception for cases "capable of repetition, yet evading review" applicable here, then, we would have to forecast bad behavior on Incumaa's part. We surely cannot base our mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules. Such "conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power" to hear cases for which there is *in fact* a *reasonable* expectation of repetition. *Abdul-Akbar*, 4 F.3d at 207. There must be a "demonstrated probability" that the challenged action will recur again, and to the same complainant. *Murphy v. Hunt*, 455 U.S. 478, 483 (1982) (per curiam). Because Incumaa will only find himself in the MSU again if he bucks prison policy, and because we presume that he will abide by those policies, we conclude that the "capable of repetition, yet evading review" exception to mootness does not apply in this case. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (presuming, in deciding a mootness question, that individuals will abide by the law in the future).

## III.

Federal courts are not comprised of philosopher-kings or legislative aides, and the Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of a law or policy when no ongoing controversy exists with respect to that law or policy. Given that Incumaa no longer is subjected to the MSU publications ban and there is every indication that Incumaa controls his own fate so far as the prospects for his return to the MSU are concerned, any opinion that we offered in this case about the MSU publications ban's constitutionality would be advisory in the truest sense. And we cannot avoid a mootness conclu-

sion here just because Incumaa is subject to a similar, but not identical, policy in the SMU.[6]

Accordingly, for the aforesaid reasons, Incumaa's appeal is

*DISMISSED AS MOOT.*

---

[6]Although he never presented the argument to the district court, Incumaa also asserts on appeal that the MSU publications ban likely violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc-1(a) *et seq.* (West 2003). "Generally issues that were not raised in the district court will not be addressed on appeal." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1997); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). We see no need to diverge from the general practice here and thus do not pass on Incumaa's RLUIPA argument.