OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
The Virginia Parole Board found Carl Melvin Townes ineligible for discretionary parole. After a state court denied him habeas relief, Townes filed a petition for a writ of habeas corpus in federal court, claiming that the parole ineligibility determination violated his due process and equal protection rights. The district court dismissed the petition. We granted a certificate of appealability on both constitutional claims. Because the state released Townes from prison during the pendency of this appeal, it initially contends that Townes’s claims are now moot. Alternatively, the state asserts that the district court properly dismissed the claims. Although we do not find the claims moot, we agree with the district court that Townes has failed to state any claim upon which relief can be granted and so affirm its dismissal of the case.
*546 I.
During a ten-day period in February 1991, Townes robbed three fast-food restaurants in different Virginia counties. For two of these crimes, the state specifically convicted Townes of using or displaying a firearm as part of the felony offenses. But for the third, Townes pled guilty to common law robbery in exchange for the government declining to prosecute the additional firearm charge with which it charged Townes. As a result of these various convictions, the state committed Townes to the custody of the Virginia Department of Corrections.
In Virginia, a prisoner generally becomes eligible for parole after serving a specified portion of his sentence. See Va. Code Ann. § 53.1-151(A) (2005). However, the state’s “three-strikes” statute provides that “[a]ny person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon ... when such offenses were not part of a common act, trans action or scheme shall not be eligible for parole.” Id. § 53.1-151(B1). After the Department of Corrections makes a determination of parole ineligibility under this statute, the Virginia Parole Board (“the Board”) may review that decision. Id.
The Board considered and rejected Townes’s parole application, finding him ineligible for parole consideration pursuant to the three-strikes statute. Townes then filed a habeas corpus petition in the Supreme Court of Virginia, arguing that the Board violated his due process rights in its method of counting his predicate offenses and violated his equal protection rights by discriminating against him because of his race. The state court promptly dismissed his habeas petition as “frivolous.” Townes v. Dir. of the Dep’t of Corrs., No. 032123 (Va. Nov. 5, 2003).
Townes next filed this habeas petition pursuant to 28 U.S.C. § 2254 (2006), naming as respondents Larry W. Jarvis, the warden of his prison, and Gene M. Johnson, the Director of the Virginia Department of Corrections (collectively “the Warden”). Townes again asserted that the Board’s parole ineligibility determination violated his due process and equal protection rights. The district court granted the Warden’s motion to dismiss. Townes timely appealed.
While this appeal was pending, Virginia released Townes from prison on mandatory parole pursuant to Va.Code Ann. § 53.1-159 (2005). In addition to the conditions imposed by his parole, Townes must also serve a period of probation administered by the state courts.
II.
Initially, the Warden contends that Townes’s release from custody moots this case. “[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction.... [A] case is moot when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.” United States v. Hardy, 545 F.3d 280, 283 (4th Cir.2008) (quotations and citations omitted). Particularly relevant here, “[mjootness has been described as ‘the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).’ ” Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (iquoting U.S. Parole Comm’n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)).
Thus, for a controversy to be moot, it must lack at least one of the three required elements of Article III standing: *547 (1) injury in fact, (2) causation, or (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Warden does not suggest that Townes lacked standing when he filed this complaint, but instead contends that Townes’s release from prison moots this action. For the reasons that follow, however, Townes demonstrates that the Board’s parole-ineligibility finding continues to result in collateral consequences with respect to the duration of his parole and probation. Thus, we cannot find this action moot.
First, Townes still asserts an injury-in-fact. Although his release from prison has foreclosed the possibility of a shorter period of incarceration, the parole ineligibility finding still may affect the length of his parole. See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (describing collateral consequences). Therefore, because Townes could receive a shorter period of parole if he receives a discretionary parole hearing, he has properly asserted an injury-in-fact. See Mujahid v. Daniels, 413 F.3d 991, 994-95 (9th Cir.2005).[1]
Second, Townes continues to satisfy the causation prong of the standing requirement. Article III requires “a ‘causal connection between the injury and the conduct complained of,’ meaning that the injuiy is ‘fairly traceable’ to the defendant’s actions.” Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 428 (4th Cir.2007) (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130). Here, the Board’s parole ineligibility finding precludes Townes from an opportunity to obtain a shortened period of parole.
Finally, Townes has alleged an injury that still satisfies the redressability prong. “[F]or an injury to meet the redressability standard, ‘it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.’ ” In re Mut. Funds Inv. Litig., 529 F.3d 207, 216-17 (4th Cir.2008) (quoting Lujan, 504 U.S. at 561, 112 S.Ct. 2130). In some cases, like the one at hand, a plaintiff will seek immediate relief from a federal court as a necessary antecedent to the ultimate relief he seeks from a different entity, like an administrative agency. In these situations, to meet the redressability prong, a party must demonstrate that a favorable decision from the federal court likely would provide him immediate relief, but need not demonstrate that it likely would provide him the ultimate, discretionary relief sought from the agency. See FEC v. Akins, 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).
In Akins, the Supreme Court specifically addressed this very issue. There the FEC contended that plaintiffs lacked standing because even if the agency “agreed with [the plaintiffs’] view of the law,” it was “possible” that the FEC could “still have decided in the exercise of its discretion” not to grant them relief. Id. According to the FEC, plaintiffs had failed to show that their alleged harm was (1) fairly traceable to the FEC’s decision and (2) redressable by judicial action. The *548 Supreme Court flatly rejected this argument, explaining that it could not “know that the FEC would have exercised its ... discretion” to deny plaintiffs relief. Id. (emphasis added). The Court further explained:
Agencies often have discretion about whether or not to take a particular action. Yet those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground. If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency’s action ... even though the agency ... might later, in the exercise of its lawful discretion, reach the same result for a different reason. Thus [plaintiffs’] “injury in fact” is “fairly traceable” to the FEC’s decision ..., even though the FEC might reach the same result exercising its discretionary powers lawfully. For similar reasons, the .courts in this case can “redress” [plaintiffs’] “injury in fact.”
Id. (emphasis added; citations omitted). Thus, the Court in Akins held that a plaintiff could establish redressability simply by demonstrating that an agency “misinterpreted the law,” even though the agency might ultimately “reach the same result.” The Court recognized that, in this situation, a plaintiff can establish redressability without demonstrating that the agency would likely grant the ultimate relief sought; to require a showing of likelihood of ultimate relief in this situation would involve courts in the speculative (if not impossible) task of predicting how an agency will exercise its discretion.
Of course, Akins also indicates that if a court “know[s]” that an agency will not grant the ultimate relief the plaintiff seeks, the plaintiff lacks standing. Id. Or, put another way, if “no realistic possibility” exists that a plaintiff can obtain the ultimate relief, he will fail to satisfy the redressability prong. See Albuquerque Indian Rights v. Lujan, 930 F.2d 49, 56 (D.C.Cir.1991); Ranger Cellular v. FCC, 348 F.3d 1044, 1048-50 (D.C.Cir.2003).
The Supreme Court has applied this same standing analysis to cases in which plaintiffs challenge government racial set-aside policies. Such plaintiffs need not show a likelihood that they would gain the ultimate relief sought. Rather, they need only show that they are “able and ready” to seek the opportunity and “that a discriminatory policy prevents [them] from doing so on an equal basis.” Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); see also W.H. Scott Constr. Co. v. City of Jackson, 199 F.3d 206, 212-15 (5th Cir.1999); Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd., 172 F.3d 397, 403-06 (6th Cir.1999).[2]
The immediate relief sought by Townes is a judgment that the state’s parole-ineli *549 gibility determination was unconstitutional, necessitating a remand to the district court to order the Parole Board to rescind that determination. We have previously granted similar relief. See Fender v. Thompson, 883 F.2d 303, 307-08 (4th Cir.1989) (remanding to the district court for entry of an order directing the Virginia Department of Corrections to rescind its parole ineligibility determination). Therefore, if Townes prevails on the merits before us, he likely will obtain the immediate relief he seeks.
Of course, Townes hopes that this immediate relief will result in a hearing before the Board and a reduction in the length of his parole. The Warden’s contention that “[u]nder Virginia law, the Virginia Parole Board has absolute discretion in matters of parole,” Supp. Br. of Appellees at 9, belies any suggestion that the Board lacks power to provide Townes relief. Given the wide discretion the Board enjoys, see Vann v. Angelone, 73 F.3d 519, 523 (4th Cir.1996), we do not “know” it would refuse to exercise its discretion to shorten Townes’s period of parole. Akins, 524 U.S. at 25, 118 S.Ct. 1777. Like the Supreme Court in Akins, we refuse to speculate as to how an independent agency would exercise its discretion. See id. Thus, Townes has set forth facts sufficient to demonstrate that his claims are not moot, and we accordingly turn to the merits of his appeal.[3]
III.
Townes contends that the Supreme Court of Virginia’s rejection of both his equal protection and due process claims provide a basis for habeas relief in this court.[4] We can grant habeas relief only *550 when an underlying state-court adjudication was “contrary to, or involved an unreasonable application of, clearly established Federal law,” or “was based on an unreasonable determination of the facts.” 28 U.S.C. § 2254(d)(i )-(2) (2006); see also Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Townes expressly acknowledges the applicability of this rigorous standard of review. See Brief of Appellant at 9. With it in mind, we examine first his due process claim and then his equal protection claim.
A.
Townes alleges that the Board denied him due process rights when it found him ineligible for parole under the Virginia three-strikes parole ineligibility statute, Va.Code Ann. § 53.1-151(B1) (2005). He contends that this provision applies only if the state has proven that a person has committed three armed robberies, and he asserts that only two of his convictions meet this requirement. Townes concedes that the state convicted him of firearm offenses in connection with two of his robbery convictions. But he argues that because the state did not convict him of a firearm offense in connection with the third robbery, the Board erred in holding that that third crime counted as an armed robbery for purposes of the three-strikes statute.
Townes has not identified any clearly established federal law that prohibits the Board from considering conduct unnecessary to a conviction as part of its three-strikes determination. Nor has he demonstrated that the state unreasonably determined any facts in applying the governing legal principles to his case. This claim cannot, therefore, provide a basis for habeas relief. See Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000) (Kennedy, J., plurality op.).
B.
Townes, an African American, also maintains that the Board violated his equal protection rights by discriminating against him because of his race. Specifically, he alleges that the Board violated these rights by declining to provide him the benefit of the “common act” exception to the three-strikes parole eligibility statute, when it did provide such a benefit to a Caucasian woman.
Townes contends that the “district court failed ... to properly apply the [12(b)(6) ] standard of review” in rejecting his equal protection claim. Brief of Appellant at 29, 30; see also id. at 31-35; Reply Brief at 16-19. When “assessing whether a § 2254 claim has been ‘properly dismissed without an evidentiary hearing or discovery,’ ” a court “must evaluate its underlying allegations pursuant to the principles of Federal Rule of Civil Procedure 12(b)(6).” Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir.2009) (quoting Conaway v. Polk, 453 F.3d 567, 582 (4th Cir.2006)). Therefore, a court must accept as true a habeas petition’s well-pleaded allegations (but not its “legal conclusions,” see Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)). Of course, when a state court has adjudicated a habeas claim on the merits (Townes concedes that, under controlling circuit precedent, the state *551 court adjudicated his claim on the merit s, Brief of Appellant at 9 n. 3), the petitioner must allege facts sufficient to meet the exacting standard set forth in 28 U.S.C. § 2254(d) (2006). See Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir.2000). Townes maintains that the allegations in his complaint, when taken as true, establish the Supreme Court of Virginia’s decision as “based on an unreasonable determination of the facts.” 28 U.S.C. § 2254(d)(2).[5] For the following reasons this argument fails.
The Virginia three-strikes statute is race neutral. See Va.Code Ann. § 53.1-151(B1) (2005). Therefore, to succeed on any equal protection challenge to it, a litigant must allege facts demonstrating “[1] that he has been treated differently from others with whom he is similarly situated and [2] that the unequal treatment was the result of intentional or purposeful discrimination,” i.e., in this case, discrimination on the basis of race. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001) (emphasis added).
Relying only on a single newspaper article, Townes alleges that he is similarly situated to Sue Kennon, reportedly a white, “upper middle-class housewife,” who committed four robberies with a broken toy pistol over the course of eight days. See Bill Baskervill, Convicted Bank Robber Finds Unlikely Allies, Richmond Times Dispatch, July 28, 2003, at B5. According to the newspaper article, the Board ruled that Ken non’s four crimes in eight days constituted “a single criminal act,” exempting her from the three-strikes statute. Id. Kennon thus became eligible for discretionary parole, which the Board granted. Id.
Clearly, in some respects Townes’s and Kennon’s crimes differ. Kennon committed four robberies in eight days with the same toy pistol while Townes, accompanied by various accomplices, committed three robberies in ten days with different real guns. Just as clearly, however, in some respects their crimes are similar. Both robbed a series of retail establishments. Both completed these robberies in less than two weeks. And both displayed a weapon during the robberies. But even assuming Townes alleged, and the state court unreasonably rejected, facts sufficient to satisfy the first element of an equal protection claim — unequal treatment of similarly situated persons[6] — he has failed to allege facts sufficient to satisfy the second element of such a claim — intentional discrimination.
*552 To satisfy this second element in a habeas petition, Townes must provide allegations sufficient to hold that the state court unreasonably determined the facts against him when it rejected his claim that the Board intentionally or purposefully discriminated against him on the basis of race. This is so because “[t]o prove that a statute has been administered or enforced discriminatorily,” and so violates equal protection rights, a plaintiff must show “more ... than the fact that a benefit was denied to one person while conferred on another.” Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 819 (4th Cir.1995) (emphasis added). He must also allege that the state intended to discriminate against him. Id. Townes alleges no facts that, if proved, would demonstrate that the Board intentionally discriminated against him. See Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir.2006). A fortiori, Townes has failed to allege a basis for us to hold that the state court unreasonably determined his claim to be frivolous.
Of course, Townes alleges that “[i]n a similar case, (Sue Kennon), a white upper-middle-class woman in similar circumstances and facts was given consideration not given to this black male.” But his sole allegation as to the Board’s motive is:
The arbitrary and [capricious] refusal of the Board to grant Petitioner the same form of consideration can be seen as deliberate discrimination: Ms. Kennon’s crimes have received different treatment from Petitioner’s crimes. Petitioner was a 16 year old, black male from the projects in Richmond while Ms. Kennon is a white, middle-class female.
Thus, Townes only alleges that his case “can be seen as deliberate discrimination” (emphasis added). Not only does he never allege that the Board actually did intentionally discriminate against him, but more significantly, Townes never alleges any of the factors that “have been recognized as probative of whether a decisionmaking body was motivated by a discriminatory intent.” Sylvia Dev. Corp., 48 F.3d at 819. For example, Townes does not allege a “consistent pattern” of intentional discrimination by the Parole Board, a “history of discrimination” by the Board, a “specific sequence of events” leading up to the Board’s ineligibility finding, or “contemporary statements by decisionmakers” evidencing intentional discrimination by the Board. Id. In sum, Townes sets forth no facts — indeed no allegations — supporting the contention that the Board intentionally discriminated against him because of his race, let alone that the state court acted unreasonably in rejecting this claim.
Accordingly, the district court did not err in dismissing Townes’s equal protection claim.
IV.
For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

. Contrary to the dissent’s suggestion, although Townes's release from prison has altered the ultimate relief he hopes the Board will grant (a shortened term of parole as opposed to a shortened sentence), the relief he seeks from the federal courts has remained constant. That is, Townes still requests a judgment that the Board's parole-ineligibility finding violated his constitutional rights and an order directing the Board to rescind this finding. Moreover, also contrary to the dissent's suggestion, Townes need not again seek relief from the Board, which has already adjudicated Townes as statutorily ineligible for parole. The law does not require such a futile act. Cf. Lynce v. Mathis, 519 U.S. 433, 436-37 n. 4, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); Tesoro Refining & Mktg. Co. v. FERC, 552 F.3d 868, 873-74 (D.C.Cir.2009).

. Contrary to the dissent's claim, Townes is “able and ready” to obtain the ultimate relief he seeks — a shortened period of parole. Moreover, our standing holding is not an "advisory opinion” but simply a straightforward application of Akins and the racial preference cases. Indeed, Townes' claim mirrors those of the plaintiffs in the racial preference cases. Like them, he alleges that "a discriminatory policy” (the Board’s allegedly discriminatory parole ineligibility determination) "prevents” him from seeking something (a shortened period of parole) "on an equal basis” with other persons. Northeastern Florida, 508 U.S. at 666, 113 S.Ct. 2297. Thus, as one of our sister circuits has recently held, the standing framework set forth in the racial preference cases applies in the present context. See Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1101-03 (D.C.Cir.2005) (applying Northeastern Florida to a parole regulation to find that “[a] decision from this court finding the regulation unlawful and requiring a new parole *549 hearing with representation would redress [plaintiff's] injury”).

. Our friend in dissent attempts to find support for his position in a number of cases holding a claim moot because the plaintiff failed to allege that the challenged act resulted in continuing collateral consequences. See Spencer, 523 U.S. at 14-16, 118 S.Ct. 978 (parole revocation does not have collateral consequences that survive prisoner’s release); Hardy, 545 F.3d at 283-85 (prisoner completed term of supervised release); Incumaa v. Ozmint, 507 F.3d 281, 286-89 (4th Cir.2007) (prisoner no longer subject to challenged condition of confinement); Taylor v. Rogers, 781 F.2d 1047, 1051 (4th Cir.1986) (same); Inmates v. Owens, 561 F.2d 560, 561-63 (4th Cir. 1977) (same). These cases are inapposite because Townes clearly does allege continuing collateral consequences: he claims that the parole-ineligibility finding improperly extends his period of parole and probation. The dissent also seeks to rely on United States v. Johnson, 529 U.S. 53, 58-60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), which simply held that, under federal law, an error in a prisoner's release date does not automatically shorten the duration of that prisoner’s term of supervised release. Mootness, however, was not at issue in Johnson. The dissent relies on one circuit’s holding that Johnson renders such attacks on supervised release moot. See Burkey v. Marberry, 556 F.3d 142, 148-51 (3d Cir.2009). Not only does Burkey constitute out-of-circuit precedent interpreting the very different federal supervised release scheme, but it also represents a minority interpretation of Johnson. Two other circuits have held Johnson does not render such claims moot. See Levine v. Apker, 455 F.3d 71, 76-77 (2d Cir.2006); Mujahid, 413 F.3d at 993-95. We need not enter this fray because Johnson has no bearing on how the Virginia Parole Board chooses to exercise its "absolute” discretion over parole. See Garrett v. Commonwealth, 14 Va.App. 154, 415 S.E.2d 245, 247 (1992).

. We note that after Townes filed his complaint but prior to the filing of appellate briefs in this case, the Supreme Court held that 42 U.S.C. § 1983 (2000) provides a proper vehicle for challenges to state parole ineligibility determinations. See Wilkinson v. Dotson, 544 U.S. 74, 82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) . It is not entirely clear whether a habeas petition under 28 U.S.C. § 2254 (2006) may also provide an avenue for such a challenge. See Benchoff v. Colleran, 404 F.3d 812, 815 n. 4 (3d Cir.2005) (noting lack of clarity and citing cases); Wilkinson, 544 U.S. at 86-87, 125 S.Ct. 1242 (Scalia, J., concurring). However, Wilkinson does not expressly *550 foreclose the use of § 2254 to bring such a challenge. Moreover, neither the state nor Townes's appointed counsel has suggested to us in briefs or at oral argument that a habeas petition is an improper vehicle for Townes’ claim. Nor has any party ever urged that we construe the complaint as having been brought under § 1983 rather than § 2254. Accordingly, we treat Townes’s claims as titled by him — the basis for habeas relief pursuant to § 2254.

. Townes also briefly asserts that the Supreme Court of Virginia’s rejection of his equal protection claim "was contrary to and an objectively unreasonable application” of clearly established federal law. Brief of Appellant at 29. But he never offers any rationale for this assertion and we see none.

. The district court suggested that "[i]n light of the myriad of factors involved in a parole decision, '[i]t is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review of an equal protection claim.’ ” Townes v. Jarvis, No. 1:04cv582 (E.D.Va. Aug. 22, 2005) (emphasis added) (quoting Reffitt v. Nixon, 917 F.Supp. 409, 414 (E.D.Va.1996)). This analysis seems somewhat inapposite to the case at hand because Townes does not challenge the Board’s ultimate decision to deny him parole based on any of a "myriad of factors.” Rather he challenges the Board’s refusal to provide him the benefit of the exception to the three-strikes statute, which rendered him ineligible for parole consideration. The three-strikes statute provides that this inquiry turns only on whether a person's crimes constitute "a common act, transaction or scheme.” Va.Code Ann. § 53.1 — 151(B 1) (2005). Two persons with identical criminal histories who committed identical crimes (perhaps co-conspirators) would surely be "similarly situated” for purposes of determining parole eligibility.