**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-7459

BRENNEN M. SMITH,

        Petitioner – Appellant,

        v.

J.C. STREEVAL, Warden,

        Respondent – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  James P. Jones, Senior District Judge.  (7:20-cv-00439-JPJ-PMS)

Argued:  September 19, 2023                     Decided:  February 21, 2024

Before GREGORY and HEYTENS, Circuit Judges, and Deborah L. BOARDMAN, United States District Judge for the District of Maryland, sitting by designation.

Appeal dismissed as moot and judgment vacated and remanded with instructions by unpublished opinion.  Judge Boardman wrote the opinion, in which Judge Gregory and Judge Heytens joined.

**ARGUED:**  Ryan Mackenzie Proctor, JONES DAY, Washington, D.C., for Appellant.  S. Cagle Juhan, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF:**  Yaakov M. Roth, Miranda Cherkas Sherrill, JONES DAY, Washington, D.C., for Appellant.  Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BOARDMAN, District Judge:

While this appeal was pending, Brennen Smith accomplished his legal quest to avoid serving more time in prison than he was supposed to serve. After Smith appealed the district court's denial of his 28 U.S.C. § 2241 petition challenging how the Bureau of Prisons calculated his release date, but before briefing was complete, the BOP recalculated Smith's release date and released him from prison on the date Smith said he should be released. Smith thus achieved the very goal he sought in his petition, and he was not incarcerated a day longer than he expected. Ordinarily, that would be the end of the story, but not here. Smith maintains that he requested, and should get, additional relief: He wants an order directing the BOP to change its internal records to reflect the date he believes his federal sentence *started*. This is because, even though Smith agrees that he was released from prison on the correct date, he disagrees with *how* the BOP calculated his release date. He insists his federal sentence started on the day it was imposed, December 10, 2018; the BOP believes it started on June 19, 2019. To resolve that dispute, this Court would have to determine whether the federal government or the state of Iowa had primary jurisdiction over Smith when he was sentenced federally. Smith argues he needs this Court to opine on this difficult question because an order validating his legal position is both necessary and helpful to bolster his argument for a reduction of supervised release under 18 U.S.C. § 3583(e). We disagree. Although a § 2241 petition is not necessarily mooted by a petitioner's release from incarceration, we see no means to avoid concluding that Smith's release moots this appeal. And so, we dismiss his appeal as moot and vacate the district court's opinion.

2

I.

Smith's odyssey began on January 29, 2017, when he was arrested and detained in Scott County, Iowa, on domestic violence charges. While Smith was in custody, Scott County also charged him with theft and possession of marijuana. Then, on February 22, 2017, another Iowa county, Muscatine County, charged Smith with operating a vehicle without the owner's consent. On March 1, 2017, Muscatine County issued an arrest warrant but never executed the warrant or lodged a detainer with Scott County. The two sets of Iowa charges were not related.

On April 26, 2017, Scott County dismissed its charges against Smith in favor of federal prosecution in the U.S. District Court for the Central District of Illinois. The next day, Smith was transferred to federal custody and arrested on an indictment charging him with felon-in-possession of a firearm and possession of stolen goods. The unrelated Muscatine County charge remained pending.

In January 2018, while in federal custody, Smith pled guilty to the federal charges. In October 2018, he pled guilty, in absentia, to the Muscatine County charge on the understanding that he would receive a two-year sentence concurrent with his yet-to-be-imposed federal sentence. On December 6, 2018, the U.S. District Court for the Central District of Illinois sentenced Smith to 115 months' imprisonment and three years of supervised release. The judgment, which was entered on December 10, did not state whether Smith's federal sentence would run concurrent with or consecutive to any other sentence. On December 11, the day after judgment was entered in the federal case, Muscatine County sentenced Smith, again in absentia, to 24 months' incarceration to be

3

served in federal custody and concurrent with the federal sentence. The Muscatine County arrest warrant was withdrawn that day.

Upon receipt of the judgment, the BOP endeavored to calculate the release date for Smith's federal sentence. Because the BOP believed—incorrectly as it turned out—that Smith had been arrested on the Muscatine County charge on February 22, 2017, while he was detained in Scott County, the BOP determined that Scott County should have released Smith to the custody of Muscatine County in April 2017, not to federal custody. And based on that determination, Smith was transferred back to Iowa custody on March 1, 2019, to serve his two-year sentence on the Muscatine County charge. There, Iowa credited him with the 80 days he spent in federal custody after being sentenced on the Muscatine County charge (December 11, 2018, through March 1, 2019) but did not credit him for the time he spent in custody before the Muscatine County sentencing (January 29, 2017, through December 10, 2018). On June 21, 2019, Iowa paroled Smith and returned him to federal custody to serve his federal sentence. Upon his return, the BOP calculated his release date as October 10, 2025. According to the BOP, Smith's federal sentence began on June 21, 2019, the day he returned to federal custody, and he was not entitled to credit for time served before that day.

Smith insisted the BOP was wrong. His administrative appeals ensued. Eventually, Smith won a partial victory: The BOP credited towards his federal sentence the 681 days he spent in custody from January 29, 2017 (the date of his initial arrest) through December 10, 2018 (the date of the Muscatine County sentencing). But the BOP did not credit him the time spent in custody from December 11, 2018, through June 20, 2019, because Iowa

4

had credited that time towards his Muscatine County sentence and he could not receive credit for it towards his federal sentence. Smith insisted he was entitled to credit towards his federal sentence for that time too.

Unable to persuade the BOP he was right, Smith filed a habeas petition pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Western District of Virginia, where he was serving his federal sentence. Smith requested an order directing the BOP to revise his federal sentence start date to December 6, 2018, and to credit him the six-month period between his federal sentencing and his return to federal custody in June 2019. On September 29, 2021, the district court granted summary judgment to the respondent and denied Smith's petition. The district court found that Iowa had retained primary jurisdiction over Smith even after Scott County released him to federal custody in favor of federal prosecution and that the BOP correctly denied him credit for time served from December 11, 2018, through June 20, 2019. That time, the court held, had been credited towards the Muscatine County sentence and could not be double counted. Smith timely appealed.

In his opening brief, filed *pro se* on November 9, 2021, Smith argued that "his Federal sentence should commence upon the day it was imposed, December 6, 2018, because he was in exclusive Federal Custody" and that "he is entitled to Post-Sentencing Credit from December 11, 2018, until June 21, 2019." Pet. Informal Op. Br. 7, *Smith v. Streeval*, No. 21-7459 (4th Cir. Nov. 9, 2021). Smith asked this Court to order "that the BOP revise the date of commencement of [his] federal sentence to December 6, 2108 [sic]" and to order "the BOP to award [him] POST-sentencing credits under 18 U.S.C. § 3585(a)

5

for all dates following his federal sentencing." *Id*. On March 31, 2023, we appointed counsel, who filed a supplemental opening brief. During briefing, it came to our and counsel's attention that Smith had been released from BOP custody on October 6, 2022. Earlier that year, the Muscatine County conviction had been vacated. The reason for the vacatur was that Smith's plea to the state charge was not knowing and voluntary because it was based on an agreement that his state sentence would run concurrent with his federal sentence, which did not happen. With the state conviction vacated, the BOP finally gave Smith what he had sought all along: credit for time served from December 11, 2018, through June 21, 2019. The BOP recalculated his release date and released him from custody on October 6, 2022. Because of Smith's timely release from prison, the respondent moved to dismiss the appeal as moot. We denied the motion. Now, having fully considered the briefs and oral argument, we agree the appeal is moot.

## II.

Article III limits this Court's jurisdiction to cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1; *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021). For there to be a case, "a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). "That limit applies throughout the course of litigation to the moment of final appellate disposition, so a case may become moot after entry of a district court's judgment and while an appeal is pending." *Eden, LLC v. Justice*, 36 F.4th 166, 169–70 (4th Cir. 2022). "[F]or a controversy to be moot, it must lack at least

6

one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability." *Townes v. Jarvis*, 577 F.3d 543, 546–47 (4th Cir. 2009).

This case is moot. Smith filed his petition to ensure he would not spend more time in prison than he was supposed to spend. He succeeded. While his appeal was pending, Smith was released on the right date. As a result, he suffers no injury now.[1] That moots his case. *See, e.g.*, *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017) (en banc order).

Smith argues he is injured, still, by the BOP's maintenance of an inaccurate record of the date his sentence started. A dilemma dooms this bid to sustain Smith's case. Either he identifies a redressable issue that is not an injury or he identifies an injury that we cannot redress. Either way, this case is over.

---

[1] For this reason, the authorities Smith cites do not, as he argues, show the case is not moot. In those cases, the petitioners—who were, like Smith, on supervised release—alleged they had overstayed their prison sentences. *See Pope v. Perdue*, 889 F.3d 410, 413–15 (7th Cir. 2018) (appeal not moot because the petitioner claimed he should have served his federal and state sentences concurrently and, if correct, he had spent too long in prison); *United States v. Epps*, 707 F.3d 337, 343–45 (D.C. Cir. 2013) (appeal not moot because there was a "very substantial likelihood" that a finding that the petitioner had over-served his sentence would influence his request for a sentencing reduction based on a sentencing guidelines change and might result in an early termination of supervised release); *Levine v. Apker*, 455 F.3d 71, 77 (2d Cir. 2006) (appeal not moot because if the petitioner was correct, he should have been released to a halfway house earlier than he had been); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (appeal not moot because if the sentencing court incorrectly denied the petitioner a particular credit towards his sentence, he would have overstayed); *Mujahid v. Daniels*, 413 F.3d 991, 995 (9th Cir. 2005) (appeal not moot because the petitioner challenged calculation of good time credit, and if he was correct, he had spent too much time in prison). Their injuries thus remained "real, and not abstract." *See Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016). Smith cannot—and does not—say the same.

If Smith's alleged injury is the BOP's inaccurate record, then, in principle, the district court could redress that by an order directing the BOP to correct it.[2] But an inaccurate record, without more, inflicts no injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021).

Smith says there is more. He tells us the psychological toll he suffered in prison fighting for his timely release (which he secured) and fearing he would not be released on time (which he avoided) renders his term of supervised release inequitable. An inequitable term of supervised release is an injury. *See Mujahid v. Daniels*, 413 F.3d 991, 994–95 (9th Cir. 2005). But any such injury is not redressable here and now. An order from this Court correcting the BOP's record of the date his sentence started is neither necessary nor sufficient to right that alleged wrong. That is up to the sentencing court. *See United States v. Johnson*, 529 U.S. 53, 60 (2000) (citing 18 U.S.C. § 3583(e)).

Acknowledging that, Smith looks ahead to the sentencing court. He says the BOP record prevents him from persuading that court that his term of supervised release is inequitable. He thinks that if we ordered the BOP to correct that record, the sentencing court would see why he feared he would be incarcerated for too long. But with or without that order, Smith is free to argue to the sentencing court that his supervised release term should be reduced under 18 U.S.C. § 3583(e) because of his travails in prison. An order from us might strengthen some future argument Smith could make before that court. But it is not necessary. *Cf. Townes*, 577 F.3d at 547 (holding case not mooted by petitioner's

---

[2] Because we dismiss the case as moot, we do not decide whether that relief is available under § 2241.

release from prison after overstay because order invalidating parole determination was necessary antecedent to parole reduction). And we can only speculate as to whether or how such an order would impact the sentencing court's exercise of its discretion. *See Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.*, 37 F.4th 453, 458–59 (7th Cir. 2022) (noting it was speculative and a "mere possibility" a ruling would influence how the sentencing court would exercise its "wide discretion" under 18 U.S.C. § 3583(e)).

Now that Smith has been released from prison on time, he suffers no injury-in-fact that could be redressed in this suit. For that reason, this case is moot.

III.

When a case becomes moot during an appeal, this Court's practice is to vacate the district court's opinion and remand with directions to dismiss. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021), *cert. denied sub nom. Marshall v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 142 S. Ct. 1447 (2022). This case is moot, so we do the same here. The district court's opinion is vacated, and the case is remanded with instructions to dismiss it as moot.

*APPEAL DISMISSED, JUDGMENT VACATED*
*AND REMANDED WITH INSTRUCTIONS*

9