# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2008          Decided January 23, 2009

No. 07-1461

TESORO REFINING AND MARKETING COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

CALNEV PIPE LINE LLC AND BP WEST COAST PRODUCTS
LLC,
INTERVENORS

———

On Petition for Review of an Order
of the Federal Energy Regulatory Commission

———

*Melvin Goldstein* argued the cause for petitioner. With him on the briefs were *R. Gordon Gooch* and *Elisabeth R. Myers*.

*Carol J. Banta*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Thomas O. Barnett*, Assistant Attorney General, U.S. Department of Justice, *John J. Powers III* and *Robert J. Wiggers*, Attorneys, *Cynthia A. Marlette*, General Counsel, Federal Energy Regulatory Commission, and *Robert H. Solomon*, Solicitor.

*Charles F. Caldwell* and *Catherine O'Harra* were on the brief for intervenor Calnev Pipe Line LLC in support of respondent.

Before: SENTELLE, *Chief Judge*, and GRIFFITH, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Tesoro Refining and Marketing Company, a petroleum products company, petitions for review of an order of the Federal Energy Regulatory Commission ("FERC" or "Commission") that approved an oil pipeline's new rates, adjusted for inflation. The major question presented on the merits is whether FERC acted arbitrarily or capriciously when it approved that rate increase, knowing that the oil pipeline's revenues exceeded its cost of service. Because Tesoro raises new arguments for the first time before this court, it has failed to exhaust its administrative remedies. We dismiss the petition for review.

## I. Background

Petitioner Tesoro Refining and Marketing Company and intervenor BP West Coast Products LLC (collectively, "Tesoro") seek review of an order by FERC that upheld an increase in the rates charged by FERC's intervenor Calnev Pipe Line LLC ("Calnev"). Tesoro's complaint showed that according to Calnev's Form 6—a cost disclosure form oil pipelines are required to file before the Commission—Calnev received more in operating revenues than its cost of service. Filed on August 1, 2007, Tesoro's complaint covered rates from July 1, 2005 through July 1, 2007.

Tesoro filed the complaint under 18 C.F.R. § 343.2, a regulation that permits challenges to pipeline rates adjusted for inflation under 18 C.F.R. § 342.3. Such complaints "must allege . . . that the rate increase is so substantially in excess of the actual cost increases incurred by the carrier that the rate is unjust and unreasonable." 18 C.F.R. § 343.2(c)(1). Rather than focusing on the rate increase relative to the actual cost increase, Tesoro's complaint focused on the absolute difference in revenues over cost of service. Tesoro based this focus on an earlier FERC order, which considered the question whether "the Commission should [deny a] carrier a further" inflationary increase, "even though the rate increase for the year is not substantially in excess of the cost increase for the year," if that carrier "is substantially over recovering its cost of service." *BP West Coast Prods. LLC v. SFPP, L.P.*, 119 F.E.R.C. ¶ 61,241, ¶ 10 (June 6, 2007) ("BP West Order"). In that case, FERC held that a complaint against an inflationary rate increase could succeed if it "establishe[d]" that a pipeline was "substantially over-recover[ing] its costs" even as it filed for the increase. *Id.* at ¶ 11. Because it based its complaint on the BP West Order, Tesoro did little more than show that Calnev's revenues exceeded its cost of service and that it had submitted for inflationary rate increases. Under the simplest reading of the BP West Order, that would have been enough.

But as it turned out, it wasn't enough. For procedural and technical reasons not relevant here, FERC had held its BP West Order in abeyance. The pipeline at issue in that order, SFPP, L.P. ("SFPP") requested rehearing. On November 9, 2007, FERC denied SFPP's request for rehearing, but substantially narrowed any opening created by the BP West Order. *BP West Coast Prods., LCC v. SFPP, L.P.*, 121 F.E.R.C. ¶ 61,141 (November 9, 2007) ("Clarification Order"). Recognizing the BP West Order, "as written[,] could have some unintended consequences," the Commission expressed concern that "[t]he

phrasing . . . could lead to a denial of an index-based [i.e., inflationary] increase in a year in which the pipeline's cost increase exceeded or was in the same range as the index amount and thus there was no material change in its return." *Id.* at ¶ 9.

FERC therefore "clarifie[d]" the BP West Order and required a complainant to "show (1) that the pipeline is substantially over-recovering its cost of service and (2) that the indexed based increase *so exceeds* the actual increase in the pipeline's cost that the resulting rate increase would *substantially exacerbate* that over-recovery." *Id.* at ¶ 10 (emphases added). It explained that it made this clarification so as not to conflate complaints under 18 C.F.R. § 343.2 to "a single year's indexed-based increase" with "complaint[s] under section 13 of the Interstate Commerce Act [("ICA")] against the base rate" increased "over several years." *Id.*[1]

---

[1] The Interstate Commerce Act, 49 U.S.C. app. § 13(1) *et seq.* (1988) (repealed), governs oil pipeline rates. As we concisely explained in an earlier case,

> [a]lthough the ICA was repealed in 1978, *see* Pub. L. No. 95-473 § 4(b), (c), 92 Stat. 1466, 1470 (Oct. 17, 1978), FERC has "the duties and powers related to the establishment of a rate or charge for the transportation of oil by pipeline or the valuation of that pipeline that were vested on October 1, 1977, in the Interstate Commerce Commission." 49 U.S.C. § 60502 (2003). The relevant version of the ICA was, but is no longer, reprinted in the appendix to title 49 of the United States Code. Therefore, when we refer to FERC's authority under the ICA, we cite to the 1988 edition of the U.S. Code, the last such edition that reprinted the ICA as it appeared in 1977.

*BP West Coast Prods., LLC v. FERC*, 374 F.3d 1263, 1271 n.1 (D.C. Cir. 2004).

On the basis of this clarification, FERC dismissed Tesoro's complaint. *Tesoro Ref. & Mktg. Co. v. Calnev Pipe Line, L.L.C.*, 121 F.E.R.C. ¶ 61,142 (November 9, 2007) ("Tesoro Order"). Through a straightforward application of its newly announced two-part test, FERC rejected Tesoro's objections to the rate years beginning July 1, 2006 and 2007. "Calnev established that the increases taken July 1, 2006 and 2007 were based on cost increases that were actually more than the increases permitted by the index." *Id.* at ¶ 7. Therefore, they "did not substantially exacerbate [Calnev's] current over-recovery." *Id.* As for the rate year beginning July 1, 2005, the Commission found it time barred: "[T]he complaint against the July 1, 2005 increase was filed on August 1, 2007 and is time barred given the strict two year statute of limitations under the [ICA]." *Id.* (citing Section 16(3)(b) of the ICA).

Without seeking rehearing, Tesoro petitioned this court for review. It now makes several new arguments. First, Tesoro argues what it never precisely did in its complaint, that any oil pipeline rate exceeding its carrier's cost of service must be unjust and unreasonable. Therefore FERC's approval of Calnev's inflation adjustments—because they resulted in rates that exceeded Calnev's cost of service—was arbitrary and capricious or contrary to law. Second, it argues that Calnev's rates are unjust and unreasonable under the statute because Calnev's costs per barrel increased less than its rate increase. Third, Tesoro argues that because the Commission has rejected both its protests and its complaints, it is effectively without a remedy to challenge Calnev's rate increases. Fourth, Tesoro objects to the Commission's statute-of-limitations dismissal of its complaint against rates beginning July 1, 2005. Because Tesoro has not exhausted its administrative remedies with respect to any of these arguments, we dismiss its petition for review of FERC's order.

## II. Analysis

"A party must first raise an issue with an agency before seeking judicial review." *ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 962 (D.C. Cir. 2007) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952)). "This requirement . . . ensures 'simple fairness' to the agency and . . . provides this Court with a record to evaluate complex regulatory issues." *Id.* It is true that the ICA contains no rehearing requirement. *Compare* 49 U.S.C. app. § 17(9)(h) (1988) (ICA) *with* 15 U.S.C. § 717r(a)-(b) (Natural Gas Act) *and* 16 U.S.C. § 825*l*(a)-(b) (Federal Power Act). But *ExxonMobil* specifically rejected this as an excuse for failing to exhaust administrative remedies, stating that the petitioners' "error was not failing to seek rehearing, but rather failing to raise the issue at all." *ExxonMobil*, 487 F.3d at 962. We begin by noting that, as a practical matter, requesting rehearing could have helped Tesoro to get the outcome it desires. The BP West Order was significantly clarified by a request for rehearing by SFPP. *See* Clarification Order, 121 F.E.R.C. ¶ 61,141. Given that FERC altered its interpretation at the request of a carrier, it may very well have done the same for a shipper.

A

Because "[n]o one is entitled to judicial relief . . . until the prescribed administrative remedy has been exhausted," *Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)), parties seeking judicial review before exhaustion typically try to show how their situation fits one of "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion," *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). These circumstances include delay that either

is excessive or leads to irreparable injury; inability of the agency to grant effective relief; and bias within or predetermination by the agency. *See McCarthy*, 503 U.S. at 146-49.

Tesoro's primary argument is not one of these ordinary exceptions but instead an invocation of two cases interpreting statutory exhaustion requirements. In *Arkansas Power & Light Co. v. FPC*, 517 F.2d 1223 (D.C. Cir. 1975), we considered an issue that no party had raised below. *Id.* at 1236. The issue was whether the Federal Power Commission ("FPC") must prepare an environmental impact statement under the National Environmental Policy Act of 1969 ("NEPA") before issuing a curtailment plan for the provision of natural gas. *See* 42 U.S.C. § 4321, *et seq*. We decided that we could, but were not required to, hear a newly raised claim based on this theory, because the Natural Gas Act specifically permits review if "there is reasonable ground for failure" to raise the claim. 15 U.S.C. § 717r(b); *see Ark. Power*, 517 F.2d at 1236. We found that the FPC had previously "expressed its opinion that NEPA did not apply to curtailment proceedings," *Ark. Power*, 517 F.2d at 1237, but that an intervening decision from the Fifth Circuit, *see Louisiana v. FPC*, 503 F.2d 844 (5th Cir. 1974), had led the FPC to reverse its position. Because the FPC admitted that its new practice was to file impact statements for natural gas curtailment plans, we avoided "the unseemly prospect of a violation of a statutory duty now recognized by the Commission to exist without the means to direct compliance," and reached the merits to hold that the FPC was required to file an impact statement. *Ark. Power*, 517 F.2d at 1237. We later limited the reach of *Arkansas Power* to situations where there was "acknowledgment by the agency," proved "through subsequent revision of its practice, that its action under challenge had been unlawful." *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985) (citing *Ark. Power*, 517 F.2d at 1237).

This case is distinguishable from *Arkansas Power*. Tesoro based its complaint to the agency on the BP West Order alone, which was not then final and has not subsequently been repudiated. The Clarification Order was far from "acknowledgment by the agency . . . that its action under challenge had been unlawful." *ASARCO*, 777 F.2d at 774. *Public Service Co. of New Mexico v. FERC*, 832 F.2d 1201 (10th Cir. 1987), also mentioned by Tesoro, closely mirrors *Arkansas Power* and is inapposite for similar reasons. Like *Arkansas Power*, *Public Service Co. of New Mexico* considered a statutory rehearing requirement with an exception when there was a "reasonable ground for failure" to raise the claim. 16 U.S.C. § 825*l*(b); *see Pub. Serv. Co. of N.M.*, 832 F.2d at 1223-24. This section of the Federal Power Act is directly analogous to the section of the Natural Gas Act discussed in *Arkansas Power*.[2] Also like *Arkansas Power*, the Commission in *Public Service Co. of New Mexico* "admitted at oral argument that it [was] now" doing what the petitioner sought. *Pub. Serv. Co. of N.M.*, 832 F.2d at 1223. The Commission made no such admission here. In fact, by all accounts FERC is *not* following the standard it put forth in its BP West Order, but has substantially "clarifie[d]" it. Clarification Order at ¶ 9.

## B

Tesoro's meatier argument rests "upon one of the ordinary exceptions to exhaustion[:] . . . the futility of seeking relief from the agency." *ASARCO*, 777 F.2d at 774. Tesoro says bringing

---

[2] This court has observed that "the Supreme Court has repeatedly noted that these two Acts 'are in all material respects substantially identical,' *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981), and cases interpreting them may be cited interchangeably. *Id.*" *Pub. Serv. Co. of N.M.*, 832 F.2d at 1206 n.4.

these objections before FERC would have been futile, because it knew they would have been rejected. This, it says, should be sufficient to depart from the "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy*, 503 U.S. at 144-45. To prove that making these arguments before the agency would have been futile, Tesoro points to a number of orders issued by the Commission *after* the November 9, 2007 order in this case. But this approach has it backwards. Ordinarily, a party invokes the futility doctrine to prove the worthlessness of an argument before an agency that *has rejected it* in the *past*. Tesoro tries to argue that it would have been futile to raise an argument because the agency *would reject it* in the *future*. We are aware of no case, and at oral argument Tesoro's counsel could point us to no case, in which the futility doctrine has been invoked based on a subsequent agency decision. Tesoro also points to no such cases in its briefs.

All but one of the FERC orders cited by Tesoro came after November 9, 2007.[3] *See BP West Coast Prods. LLC v. SFPP, L.P.*, 121 F.E.R.C. ¶ 61,195 (November 20, 2007)*; BP West Coast Prods. LLC v. SFPP, L.P.*, 121 FERC ¶ 61,243 (December 14, 2007); *BP West Coast Prods. LLC v. Calnev Pipe Line, L.L.C.*, 121 F.E.R.C. ¶ 61,242 (December 26, 2007). The December 14, 2007 order even cites the Tesoro Order,

---

[3]Although one of these orders came after November 9, 2007, it was within the 30-day period during which Tesoro could have timely filed for rehearing. *See* 16 U.S.C. § 825*l*(a). We do not mean to imply that seeking rehearing could never be futile as a result of agency action falling within this period. But this order, *BP West Coast Products LLC v. SFPP, L.P.*, 121 F.E.R.C. ¶ 61,195 (November 20, 2007), would not have rendered rehearing futile for Tesoro, because the Commission determined that "even with the permitted index increase, [the pipeline's] rates would not have been adequate to recover its actual costs." *Id.* at ¶ 4.

highlighting Tesoro's inverse reasoning.  The one case cited by Tesoro that preceded this proceeding is not directly on point.  In *SFPP v. Mobil Oil Corp.*, 113 F.E.R.C. ¶ 61,277, ¶ 129 (December 16, 2005), SFPP raised a similar, but not identical, issue that the Commission dealt with briefly in a 135-paragraph, 160-footnote order.  In fact the order could not be directly on point, because SFPP could not have made the same arguments that Tesoro makes here, dependent as they are on the 2007 BP West Order and those that followed.

But even assuming that *SFPP* were on point, it would hardly satisfy this court's rule of permitting waiver "'in only the most exceptional circumstances.'"  *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994) (quoting *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168-69 (D.C. Cir. 1983) (internal quotation omitted)).  The futility exception is "'quite restricted,'" *id.* (quoting *Comm. of Blind Vendors of D.C. v. District of Columbia*, 28 F.3d 130, 133 n.5 (D.C. Cir. 1994), and limited to situations "when resort to administrative remedies [would be] 'clearly useless,'" *id.* (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986)); *see also Smith v. Blue Cross & Blue Shield United of Wisc.*, 959 F.2d 655, 659 (7th Cir. 1992) ("In order to come under the futility exception, [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.").  In *Communications Workers of America*, we refused a futility exception when ERISA plan administrators had "consistently interpreted the" relevant text "to deny . . . claims."  40 F.3d at 432.  As we said there, "[e]ven if one were to concede that an unfavorable decision . . . was *highly likely*, that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision." *Id.* at 433.

In this case, Tesoro points to one dubiously analogous case from 2005. This is the only possible basis for a finding of futility at the time it made its complaint to the Commission. Its other examples are all of agency conduct subsequent to the Commission's order in Tesoro's case. One of the purposes of the exhaustion doctrine is "protecting administrative agency authority." *McCarthy*, 503 U.S. at 145. Even if subsequent conduct vindicated its view—and we do not comment on whether or not it has—retroactively permitting Tesoro to avoid agency adjudication, when it had no good reason to do so, would surely undermine that authority. Therefore we hold that because of Tesoro's failure to exhaust its administrative remedies, we will not reach the merits of Tesoro's late-raised arguments.

C

Tesoro's failure to exhaust its administrative remedies with respect to its statute of limitations argument is even clearer. It did not discuss the statute of limitations at all in its complaint, and the Commission's order seems to be the first mention of the issue during the entire proceeding. *See* Tesoro Order at ¶ 7. We made clear in *ExxonMobil* that it is not error to "fail[] to seek rehearing, but rather [to] fail[] to raise the issue at all." *ExxonMobil Oil Corp.*, 487 F.3d at 962. Tesoro failed to raise this issue before the agency at all, despite having the opportunity to do so. We have no agency decision to review, and the agency has had no opportunity to consider Tesoro's arguments. Accordingly, we hold that Tesoro failed to exhaust its administrative remedies to resolve the question of the ICA's statute of limitations.

### III. Conclusion

Tesoro and its intervenors must make their legal arguments to FERC before invoking the jurisdiction of this court. Because they did not, Tesoro's petition for review of FERC's order is dismissed.

*So ordered.*