# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 14, 2025          Decided July 25, 2025

No. 22-1318

MICHAEL MUIR,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

On Petition for Review of Final Order
of the Transportation Security Administration

*William R. Weaver*, appointed by the court, argued the cause and filed the briefs as *amicus curiae* in support of appellant.

*Michael Muir*, pro se, argued the cause and filed the briefs for appellant.

*Joshua Waldman*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Brett A. Shumate*, Acting Assistant Attorney General, and *Sharon Swingle*, Attorney.

Before: PILLARD and CHILDS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

Opinion concurring in part and dissenting in part filed by *Senior Circuit Judge* RANDOLPH.

CHILDS, *Circuit Judge*: Since childhood, Petitioner Michael Muir alleges that he has lived with what he describes as a congenital birth defect that presents as a hernia in his right scrotum. Muir contends that his hernia causes him to experience various problems ranging from severe pain to potentially life-threatening partial strangulation of his intestines. Muir filed a petition challenging the Transportation Security Administration's (TSA) Final Rule, which authorized its use of scanners that use electromagnetic radiation—known as Advanced Imaging Technology (AIT) scanners—to screen airline passengers at airport security screening checkpoints. *See* Passenger Screening Using Advanced Imaging Technology, 81 Fed. Reg. 11,364, 11,365 (Mar. 3, 2016).

TSA posits that "AIT is the most effective technology currently available to detect both metallic and non-metallic threat items concealed on passengers." *Id.* However, for Muir, AIT scanners equipped with Automatic Target Recognition (ATR) software inevitably flag his hernia as a threat object, which requires TSA agents to perform pain-inducing and potentially life-threatening pat-downs of his groin area. Accordingly, Muir implores us to hold that the Final Rule and TSA's standard operating procedures (SOPs) are arbitrary and capricious, contrary to TSA's statutory authority, and violate protections afforded under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

We grant Muir's petition in part and remand the matter to TSA for further proceedings to determine whether implementation of Muir's requested accommodation under the Rehabilitation Act will impose an undue burden on the agency.[1]  We deny the petition in all other respects.

## I.

### A.

The terrorist attacks of September 11, 2001, significantly altered airport security measures.  Soon afterward, Congress established TSA, *see* Aviation and Transportation Security Act, Pub. L. No. 107–71, 115 Stat. 597 (Nov. 19, 2001), and made it responsible "for the screening of all passengers and property" boarding passenger airplanes, 49 U.S.C. § 44901(a), and developing regulations prohibiting airlines from transporting passengers who refuse to consent to the screening, *id.* § 44902(a)(1).  As a result, Congress charged TSA with ensuring that passengers did not board a commercial airline flight carrying dangerous weapons, explosives, or destructive substances.  *Id.* §§ 44901(a), 44902(a)(1).

Three years later, Congress enacted the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, 118 Stat. 3638 (Dec. 17, 2004), and directed TSA to develop "a strategic plan to promote . . . deployment of explosive detection equipment at airports to screen individuals and their personal property . . . includ[ing] walk-through explosive detection portals, document scanners, shoe scanners, and backscatter x-ray scanners."  49 U.S.C. § 44925(b)(1).  And after a spate of attempted terror attacks involving

---

[1] Our colleague dissents only insofar as he would hold that we lack jurisdiction to consider Muir's request for an accommodation pursuant to the Rehabilitation Act.

4

nonmetallic explosives, Congress further directed the Department of Homeland Security (DHS), the Cabinet-level department overseeing TSA, to "give a high priority to developing, testing, improving, and deploying" a new technology at airport screening checkpoints "that detects nonmetallic, chemical, biological, and radiological weapons, and explosives." *Id.* § 44925(a). TSA responded to these directives by prescribing the details of the screening process in a set of SOPs[2] and by barring any person from entering the "sterile area"[3] of an airport "or board[ing] an aircraft without submitting to the screening and inspection of his or her person . . . in accordance with the procedures being applied to control access to that area or aircraft." 49 C.F.R. § 1540.107(a).

In 2007, TSA initially deployed AIT scanners as secondary screening measures, but by 2010 AIT scanners were the primary method of screening. "AIT creates an image of the full body that highlights objects that are on the body." J.A. 196. TSA deploys AIT scanners that use "non-ionizing radio frequency energy in the millimeter wave spectrum to generate an image based on the energy reflected from the body," J.A. 197, and "detect metallic and non-metallic objects on an individual's body or concealed in his clothing without physical contact," 81 Fed. Reg. at 11,365. An example of the image generated by millimeter wave AIT appears below:

---

[2] "TSA's SOPs are internal documents that contain instructions for [Transportation Security Officers (TSOs)] on how to operate equipment and conduct screening. TSOs receive extensive training to perform screening as described in the SOPs. These documents are [Sensitive Security Information] and cannot be shared with the public." 81 Fed. Reg. at 11,386.

[3] "Sterile area" is defined as the area of an airport "that provides passengers access to boarding aircraft and to which the access generally is controlled by TSA . . . through the screening of persons and property." 49 C.F.R. § 1540.5.



J.A. 198.

"If an anomaly is detected [during the scan of a passenger], a pat-down of the area where the anomaly is located is usually performed to determine if a threat is present." 81 Fed. Reg. at 11,365. "A pat-down may include inspection of the head, neck, arms, torso, legs, and feet[,]" as well as "sensitive areas such as breasts, groin, and the buttocks." *Security Screening*, TSA, https://www.tsa.gov/travel/security-screening (last visited Mar. 5, 2025) ("Pat-Down Screening" drop-down box). TSA provides limited screening accommodations for those with disabilities and medical conditions, but the agency emphasizes that persons with such conditions must also "undergo screening at the checkpoint." *Disabilities and Medical Conditions*, TSA, https://www.tsa.gov/travel/tsa-cares/disabilities-and-medical-conditions (last visited Mar. 5, 2025). However, also, once an individual has begun the screening process, with or without accommodation, he or she must complete it. 81 Fed. Reg. at 11,382. "Individuals are not allowed to leave partway through." *Ramsingh v. TSA*, 40 F.4th 625, 629 (D.C. Cir. 2022).

**B.**

On July 15, 2011, in response to an earlier legal challenge

asserting that TSA failed to engage in rulemaking regarding the decision to use AIT for primary screening, we remanded the matter for TSA "to conduct a notice-and-comment rulemaking." *Elec. Priv. Info. Ctr. v. DHS*, 653 F.3d 1, 8 (D.C. Cir. 2011). As TSA explained in the preamble to its resultant proposed Rule, by that time Congress had responded to privacy concerns about AIT scanner-generated passenger images in the FAA Modernization and Reform Act of 2012, Public Law 112-95, which imposed a further requirement on TSA

> to ensure that all AIT used to screen passengers must be equipped with and employ automatic target recognition (ATR) software. 49 U.S.C. § 44901(l). That software eliminates passenger-specific (*i.e.*, individual) images and instead indicates the  location of potential threats on a generic outline. Since May 2013, all AIT units deployed by TSA have been equipped with ATR capability.

81 Fed. Reg. at 11,365. The following is an image from an AIT scanner using ATR:



J.A. 199.

As required by this Court, TSA issued a Notice of Public

Proposed Rulemaking regarding AIT on March 26, 2013. Passenger Screening Using Advanced Imaging Technology, 78 Fed. Reg. 18,287 (Mar. 26, 2013). The proposal was designed to "codif[y] the use of AIT to screen individuals at aviation security screening checkpoints," *id.* at 18,289, and account for the additional requirement to use ATR. The Final Rule regarding AIT screening with ATR was promulgated on March 3, 2016.[4] 81 Fed. Reg. 11,364.

## C.

Muir asserts that he is "a qualified individual with a disability under 42 U.S.C. § 12102 because" of his hernia. J.A. 109 ¶ 2. Muir claims that he is "symptomatic every day for at least some part of the day." J.A. 110 ¶ 3. Moreover, there is no way for him to tell when this partial intestinal incarceration is life-threatening.

On August 9, 2018, Muir alleges that he attempted to board a flight departing from Phoenix-Mesa Gateway Airport while symptomatic. The AIT scanner identified a potential threat object located at Muir's right groin. As a result, a TSA agent allegedly performed a physical pat-down of Muir's right groin area despite his protestations causing him extreme mental and physical pain and suffering. Three days later, on August 12, 2018, Muir allegedly experienced the same hardship boarding a flight leaving General Wayne A. Downing Peoria International Airport.

After his experiences in August 2018, Muir sent TSA a proposal on November 1, 2019, requesting an informal discussion pursuant to 28 C.F.R. § 14.6 about his security

---

[4] We use "AIT scanners" or "AIT scanning" hereafter as a shorthand for AIT scanners equipped with ATR software.

screening issues, which TSA subsequently denied on November 19, 2019. Muir then filed a complaint with DHS's Office for Civil Rights and Civil Liberties (CRCL) on December 15, 2019, alleging discrimination based on his disability. On January 7, 2020, CRCL closed Muir's complaint and took no action.

On December 1, 2022, while standing in the security screening line at St. Pete-Clearwater International Airport, Muir contends that he realized that his hernia was not reducible—meaning he could not return the displaced tissue to its normal position—before passing through the AIT scanner. Alyssa Pastorino & Amal A. Alshuqayfi, *Strangulated Hernia*, Nat'l Libr. of Med., https://perma.cc/3HLU-28RN (last updated Dec. 19, 2022). Faced with having to endure another painful pat-down, Muir did not board his flight. Approximately two weeks later, he filed pro se a petition for review on December 14, 2022, asking us to set aside the Final Rule as unlawful.[5] Thereafter, we appointed amicus curiae to present arguments on behalf of Muir.[6]

## II.

We have jurisdiction over Muir's petition. 49 U.S.C. § 46110. In reviewing a petition under § 46110, we uphold the agency's decision unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or unsupported by 'substantial evidence.'" *Suburban Air Freight, Inc. v. TSA*, 716 F.3d 679, 681 (D.C. Cir. 2013) (first quoting 5 U.S.C. § 706(2)(a); and then quoting 49 U.S.C. § 46110(c)).

---

[5] Muir named both DHS and TSA in his petition. DHS is no longer a party to this action after we dismissed all claims against it for lack of standing.

[6] We express our gratitude to William Weaver, Haley Tuchman, and Michelle Li for their service.

The arbitrary and capricious standard requires that the agency action be "reasonable and reasonably explained." *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 409 (D.C. Cir. 2020) (citation omitted). We will uphold the agency's determination if it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

**III.**

Muir, aided by appointed amicus, challenges the Final Rule and TSA's SOPs on several grounds. First, Muir contends that TSA's use of AIT scanners with ATR technology does not comport with statutory requirements and is therefore contrary to law. Second, amicus asserts that TSA's failure to respond to comments raising concerns with the use of AIT scanners on travelers with disabilities renders the Final Rule arbitrary and capricious. Third, amicus also claims that TSA's failure to provide alternative screening procedures for passengers with internal disabilities is arbitrary and capricious. Finally, Muir and amicus argue that the Final Rule and TSA's SOPs, as applied to Muir, violate Section 504 of the Rehabilitation Act of 1973.

Before analyzing any of those issues, we address Muir's pending motion to supplement the administrative record with additional documentation from a prior action in the United States District Court for the District of Arizona. We deny this motion as the supplemental information is unnecessary to our decision. As to his other claims, we conclude that Muir's Rehabilitation Act claim succeeds, but all other challenges are either forfeited or meritless.

## A.

Before we consider the merits of his petition, Muir must overcome an administrative exhaustion requirement. Under § 46110(d), we have jurisdiction to "consider an objection to an order of the [TSA] . . . only if the objection was made in the proceeding conducted by [TSA]." 49 U.S.C. § 46110(d). This provision requires a petitioner to raise a rulemaking challenge or point to where another party raised "the same objection[]," during the notice-and-comment process. *Vaughn v. FAA*, 756 F. App'x 8, 12 (D.C. Cir. 2018) (citing § 46110(d)). Thus, we in turn may only review those arguments the administrative agency had the opportunity to consider in the first instance. *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1150 (D.C. Cir. 2005) ("[A] party will normally forfeit an opportunity to challenge an agency rulemaking on a ground that was not first presented to the agency for its initial consideration."); *Omnipoint Corp. v. FCC*, 78 F.3d 620, 635 (D.C. Cir. 1996) ("As a general rule, claims not presented to the agency may not be made for the first time to a reviewing court.").

## 1.

First, Muir contends that TSA did not have the statutory authority to promulgate the Final Rule. He complains that the Final Rule eliminated "the millimeter wave scanner['s] . . . 'visual image'" requirement in contradiction of 49 U.S.C. § 44901(l). Pet'r Br. 13. He next protests that it improperly replaced "human image operator agents with a narrow artificial intelligence algorithm as the final decision-maker regarding potential anomalies present in passenger screening data." *Id.* As to the former, Muir asserts that "Congress require[d] that the millimeter wave scanner device [used in the screening of

passengers] create a visual image and the TSA removed the capability of the device to create a visual image." *Id.* at 23. As to the latter, Muir argues that "there is nothing in § 44901(l) to suggest that the TSA need[ed] to replace the human image operator TSO with a narrow artificial intelligence algorithm to analyze scanned data." *Id.*

TSA asserts that Muir forfeited those statutory challenges to the Final Rule by failing to either raise them during the public rulemaking proceedings or provide a reasonable ground for not making the objections. Muir responds that because other parties articulated the very same objections he raises in their public comments to TSA, our exercise of jurisdiction is proper under 49 U.S.C. § 46110(d). Amicus further suggests that it was reasonable for a person with Muir's disability to not monitor the Federal Register for notices of proposed rulemakings with the potential to affect him.

Here, TSA did not have an opportunity to consider Muir's statutory arguments during rulemaking. It is undisputed that Muir failed to personally raise the challenges, but his specific claims were also not preserved by other public comments during the notice and comment period. While some public comments addressed technological issues, no commenter raised the very objections that Muir has presented to us. Therefore, Muir forfeited his statutory challenges to the Final Rule.

**2.**

Next, court-appointed amicus asserts that TSA failed to address publicly raised concerns "that (1) medically disabled individuals are at a higher risk of triggering false positives by the AIT scanner, and (2) the subsequent pat-down is simply not safe for many of those travelers, because they can experience

severe pain or potentially fatal health complications." Amicus Reply Br. 4. Amicus further contends that while TSA addressed medical issues generally, the agency failed to either respond to comments or consider procedures for airline passengers whose medical conditions cause consistent AIT alerts resulting in pat-downs. In this regard, amicus contends, TSA's failure to address the comments concerning disabled passengers supports the conclusion that the Final Rule was arbitrary and capricious.

Here, again, there is no dispute regarding whether Muir raised this two-part disabled passenger objection during rulemaking, because he did not. However, while some commenters did reference the profiling of the medically disabled, *see, e.g.*, J.A. 153, J.A. 160, J.A. 176, and others complained about the risks associated with pat-downs, *see* J.A. 147, J.A. 149, J.A. 151, none addressed the distinct burdens on disabled persons who are simultaneously affected by both. Thus, TSA had no obligation to respond to Muir's specific circumstance when no comment raised anything materially analogous to bring the issue to its attention. *Cf. Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."). We therefore hold that court-appointed amicus' first challenge to the Final Rule is forfeited because no party raised the objection during the notice-and-comment period.

## B.

Court-appointed amicus also challenges the Final Rule because it does not provide alternative screening procedures for

travelers with internal physical disabilities, even though TSA routinely uses such alternatives for other categories of passengers—like PreCheck®[7] passengers, passengers carrying an infant, child, or a small pet, passengers accompanied by service animals, and at airports that lack AIT scanners. Amicus argues that because TSA uses the combination of walk-through metal detectors (WTMDs) and explosive trace detection swab tests as alternatives for these travelers, it is arbitrary and capricious to deny requests for alternative screening procedures for passengers with internal physical disabilities.

TSA responds to amicus' arguments by pointing out that alternative screening measures are used for TSA PreCheck® passengers, children, and the elderly because TSA pre-determined them to be low-risk travelers. Moreover, alternative screening measures are available to passengers for whom AIT screeners cannot successfully produce an image, because they cannot raise their arms as required, must remain connected to medical equipment, or must remain accompanied by service animals and pets. TSA further explained that the difference between Muir and these passengers lies in the fact that the latter have external characteristics that are immediately apparent to TSOs and do not create verification or proof issues that would be impracticable to administer at security checkpoints nationwide.

In its explanation, TSA rationally connected the facts before it to its decision to offer alternative screening procedures for two categories of passengers—(1) those deemed a lower security risk based on background checks or other

---

[7] "TSA PreCheck® is an expedited screening program that makes risk assessments about passengers prior to their arrival at an airport checkpoint." *TSA PreCheck®*, TSA, https://www.tsa.gov/news/press/factsheets/tsa-precheck (last visited June 16, 2025)

available intelligence; and (2) those whose images AIT scanners cannot successfully capture—while declining to provide a similar process for passengers with internal disabilities like Muir's. Unlike the first group, passengers with internal disabilities, like Muir, have not been determined, as a class, to present a lower security risk. *See* J.A. 40. And unlike the second group, passengers with internal disabilities going through AIT scanners, do not impede the scanners' ability to function to produce images of those passengers. *See* J.A. 60. Under 49 U.S.C. § 46110's deferential standard of review, that is enough to establish that TSA's decision to exclude alternative screening methods in the Final Rule for travelers with internal physical disabilities is not arbitrary and capricious. Accordingly, we deny court-appointed amicus' second challenge to the Final Rule. As TSA noted, Muir's challenge is more "properly presented and resolved in a claim under the Rehabilitation Act," Resp't Br. 28, to which we now turn.

## C.

Finally, we consider Muir's claim that the Final Rule and TSA's SOPs, as applied to him, violate the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797. The Rehabilitation Act "empower[s] individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." *Id.* § 701(b)(1). The Act's "basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993).

Section 504 of the Rehabilitation Act prohibits discrimination against disabled persons by recipients of federal funds. 29 U.S.C. § 794. We start by addressing two threshold

issues. First, Muir's Rehabilitation Act claim is properly before us because we, not the district courts, have exclusive jurisdiction under § 46110(a) to review claims that TSA "orders" are "not in accordance with law." *Suburban Air Freight*, 716 F.3d at 681. A TSA SOP is such an "order," *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 10 (D.D.C. 2011), *aff'd*, 463 F. App'x 4, 4–5 (D.C. Cir. 2012), which Muir asserts is not in accordance with the Rehabilitation Act. Muir challenges the SOP, as applied to him, that instructs TSOs to conduct follow-up pat-downs of body parts flagged by AIT scanners, a practice that, without appropriate accommodation, allegedly excludes Muir from participation in TSA's security screening. Pet'r Br. 44.

Our dissenting colleague takes the position that we lack jurisdiction because Muir did not specify any SOP in his petition for review. He asserts that Muir has accordingly failed to satisfy the requirements of the Federal Rules of Appellate Procedure to "specify the order . . . to be reviewed" in the petition. FED. R. APP. P. 15(a)(2)(C); *see* Partial Dissent at 1–2. We disagree. It is true that Muir, a pro se litigant, did not identify the relevant (nonpublic) SOP in his petition, but only designated the Final Rule that authorizes it. *See* Pet. for Review 1 (J.A. 32). "But a 'mistaken or inexact specification of the order to be reviewed' is 'not fatal,' as long as the 'intent to seek review of a specific order [i] can be fairly inferred from the petition for review or from other contemporaneous filings, and [ii] the respondent is not misled by the mistake.'" *Am. Rivers v. FERC*, 895 F.3d 32, 44 (D.C. Cir. 2018) (quoting *Entravision Holdings, LLC v. FCC*, 202 F.3d 311, 313 (D.C. Cir. 2000)) (alterations in original) (emphasis omitted).

Those conditions are met here. Muir's petition explained that he is not able to proceed through screening because "the configuration of the AIT [scanner] . . . algorithmically

misidentifies [his] hernia as a threat object requiring a pat-down to resolve." Pet. for Review 2 (J.A. 33). That statement sufficed to inform TSA that Muir challenged its direction to security personnel to conduct follow-up pat-downs of any potential threat object identified by an AIT scanner—a direction Muir now knows is spelled out in an SOP. Notably, TSA claims no prejudice from the petition's failure to specify an SOP. Those circumstances show that the petition meets the requirements of Rule 15(a)(2). Accordingly, we do not believe either Federal Appellate Rule of Procedure 15(a)(2)(C) or § 46111(a) preclude our exercise of jurisdiction over Muir's Rehabilitation Act claim.

Second, TSA suggests Muir's challenge is foreclosed because Muir "did not avail himself of the opportunity to bring an administrative complaint alleging a violation of Section 504." Resp't Br. 47. But § 46110(d) excuses the failure to raise a claim for an accommodation in a proceeding before the agency "if there was a reasonable ground for not making the" request. 49 U.S.C. § 46110(d). As discussed below, Muir's prior attempts at procuring an accommodation through the available administrative process were exercises in futility that excuse him from engaging in yet another such futile attempt. *See Tesoro Refin. & Mktg. Co. v. FERC*, 552 F.3d 868, 874 (D.C. Cir. 2009) (observing that the futility exception to exhaustion is "limited to situations 'when resort to administrative remedies [would be] "clearly useless."'") (citation omitted). Although our dissenting colleague is correct that the futility exception is used sparingly, Partial Dissent at 5, we find present the requisite "certainty of an adverse decision," *id.* (citation omitted), in TSA's assertion that Muir's requested accommodation "would fundamentally alter the nature of TSA's security screening program," Resp't Br. 14. *See also J.L. v. SSA*, 971 F.2d 260, 271 (9th Cir. 1992) ("Exhaustion is futile where the agency's position on an issue

'appears already set,' and it is 'very likely' what its result would have been."). We accordingly need not decide in this case whether non-employee petitioners bringing Section 504 claims ordinarily must first exhaust their administrative remedies. *Cf. id.* at 270 ("[W]e recognize that the Rehabilitation Act does not require exhaustion of remedies in all cases."), *rev'd on other grounds*, *Lane v. Pena*, 518 U.S. 187 (1996). We thus proceed to consider the merits of Muir's Rehabilitation Act claim.

**1.**

"To prove a violation of section 504, [complainants] must show that (1) they are disabled within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008). In addition, the disabled individual "bears the 'initial burden' of showing that a reasonable accommodation is possible" and "[o]nce that showing is made, an [agency] may still avoid liability by showing that the proposed accommodation would impose an 'undue hardship' on the [agency]'s operations." *Ali v. Regan*, 111 F.4th 1264, 1269 (D.C. Cir. 2024) (citations omitted).

TSA does not dispute Muir's ability to satisfy the liability elements of a Section 504 claim, that is, he "is an 'individual with a disability' as defined in 29 U.S.C. § 705(20), . . . he is 'otherwise qualified' to present to a TSA checkpoint and receive security screening . . . [and] TSA's security screening activities are a 'program or activity conducted by an[] Executive agency' under 29 U.S.C. § 794(a)." Resp't Br. 44. Rather, TSA argues that Muir's requested accommodation is

not "reasonable" because it would fundamentally alter TSA's security screening program. *Id.* at 44–45. Against this backdrop, we turn to assessing whether Muir establishes the existence of a reasonable accommodation.

**2.**

The accommodation Muir seeks is for TSA to screen him using a WTMD. He understands that if he causes the metal detector to alert, he will be subjected to pat-down, and that at TSA's discretion he may also be subjected to Explosive Trace Detection swabbing. Amicus asserts that use of this alternate screening method is a reasonable accommodation because TSA already uses WTMDs to screen "millions of passengers every year" and, therefore, it "sufficiently protects airline security." Amicus Br. 21. To further stress the reasonableness of this accommodation, Amicus observes that "[w]hile Mr. Muir can use a WTMD without incident," *id.* at 22, TSA continues to subject him "to an invasive and painful pat down procedure simply because its AIT systems erroneously categorize his medical condition as a threat," *id.* at 24.

TSA rejects any suggestion that Muir's request for screening by a WTMD is reasonable. TSA belabors that AIT "provides the most effective and least intrusive means currently available to detect both metallic and non-metallic threats concealed under a person's clothing." Resp't Br. 48 (quoting 81 Fed. Reg. at 11,367). Moreover, TSA posits that passengers primarily screened by WTMDs rather than AIT scanners "are either pre-determined by TSA to pose a lower security risk or are categorically ineligible to be screened by AIT." Resp't Br. 13. In this regard, TSA emphasizes that Muir has neither applied for PreCheck®, the program for low-risk, trusted travelers who are primarily screened by WTMDs, nor shown why he is ineligible for AIT scanning. Furthermore, it argues

any accommodation that requires either the granting of PreCheck® status without undergoing the advance background check or a pre-clearance determination of AIT ineligibility would fundamentally alter the nature of TSA's security screening program.

At oral argument, Muir clarified that he does not view PreCheck® as a reasonable accommodation because TSA reserves the right to subject airline passengers in the PreCheck® program to AIT screening, which in Muir's case would lead to a risky and excruciatingly painful pat-down. 81 Fed. Reg. at 11,380. We are persuaded that Muir has succeeded in meeting the threshold requirement that he identify an accommodation that is facially reasonable. *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237–38 (D.C. Cir. 2018) (citing *U.S. Airways v. Barnett*, 535 U.S. 391, 401–02 (2002)).

TSA routinely provides WTMD screening to passengers who are unable to proceed through AIT scanners because they cannot raise their arms above their shoulders. On the existing, admittedly incomplete administrative record, we disagree with TSA that affording Muir the same accommodation would fundamentally alter the security screening program simply because Muir's disability is not "immediately obvious and readily observable" and would therefore require TSOs to "identify and verify" his disability whenever he shows up at the airport. Resp't Br. 52. Although TSOs cannot invariably visually identify a traveler's inability to raise his arms, the agency does not require those passengers to be prescreened or provide verification of their disability.

On the available record, we are satisfied that Muir met his burden to show that a reasonable accommodation is possible to address his concerns regarding AIT scanners. However, the record will not permit a determination of whether Muir's

proposed reasonable accommodation imposes on TSA's operations an undue hardship. That assessment requires information regarding the extent to which an accommodation would create "financial and administrative burdens" for TSA, which is currently not in the record. *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987) (citation omitted); *Taylor v. Rice*, 451 F.3d 898, 908 (D.C. Cir. 2006) ("An accommodation—even a reasonable one—imposes undue hardship on an employer if it 'requir[es] significant difficulty or expense, when considered in light' of several statutory factors.") (citing 42 U.S.C. § 12111(10)). Accordingly, a remand to TSA is appropriate to determine if Muir's proposed accommodation would cause it undue hardship. *Roberts*, 463 F. App'x at 5 ("And if . . . the administrative record is inadequately developed for appellate review, section 46110 expressly permits us to remand for further proceedings.").

**3.**

Muir also challenges the Government's alleged failure to provide him any kind of process to request an accommodation to the SOPs. Specifically, under compliance procedures set forth in 6 C.F.R. § 15.70, the CRCL must investigate complaints alleging violation of Section 504 and notify the complainant within 180 days of the results of the investigation, including factfinding, statements of law, and a description of a remedy for any violation. *Id.* § 15.70(g). Muir submitted documentation showing that the CRCL did not follow those procedures, but provided him an uninformative, boilerplate response that only acknowledged receipt of his complaint. Reply Br. Addendum 42–3.

Muir was entitled to an administrative process—as outlined in 6 C.F.R. § 15.70—conducted by TSA. The agency admitted as much in its brief, Resp't Br. 47 ("DHS has

promulgated procedures for doing so, 6 C.F.R. § 15.70, which apply to its component agencies such as TSA."), and at oral argument where counsel for TSA agreed that Muir's complaint warranted investigation. Had such process occurred here, the case likely would have reached us on a more informative factual record. *Cf.* GAO, *TSA Should Assess Potential for Discrimination and Better Inform Passengers of the Complaint Process* (Nov. 2022), https://perma.cc/678M-7SFE.

\*\*\*\*\*

For the foregoing reasons, we grant Michael Muir's petition for review insofar as it alleges a violation of Section 504 of the Rehabilitation Act. Accordingly, we remand the matter to TSA to conduct the appropriate administrative process to address implementation of Muir's facially reasonable accommodation. If TSA determines that Muir's preferred accommodation would pose an undue burden on the agency, the parties should explore alternative reasonable accommodations. We deny the balance of Muir's petition for review and his motion to supplement the record.

*So ordered.*

RANDOLPH, Senior Circuit Judge, concurring in part and dissenting in part:

I join the majority opinion except for part III. C. I dissent from that part because our court lacks jurisdiction to review Muir's contentions regarding the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.

Muir's petition for judicial review invoked 49 U.S.C. § 46110(a), a statute conferring jurisdiction on the federal courts of appeals—direct review—over a person's[1] "petition for review" of an "order" of the Transportation Security Administration. The majority opinion declares that the § 46110(a) "orders" establishing our jurisdiction are TSA's Standard Operating Procedures, or "SOPs."[2] The opinion then considers Muir's arguments (and those of a court appointed "amicus" attorney) regarding the Rehabilitation Act.

The majority has missed a step. It first should have noticed that Muir's § 46110(a) petition did not designate any TSA Standard Operating Procedure as an "order" with respect to which he sought judicial review. As a consequence, and as I will explain, our court lacks jurisdiction to adjudicate Muir's claims about the Rehabilitation Act.

Rule 15(a)(2)(C) of the Federal Rules of Appellate Procedure states: a petition for direct review of an agency decision "must . . . specify the order or part thereof to be reviewed." Note the "must." Muir, although representing

---

[1] That is, "a person disclosing a substantial interest in an order" of the Transportation Security Administration. 49 U.S.C. § 46110(a).

[2] These are non-public directions to staff regarding screening procedures. *See Roberts v. Napolitano*, 798 F. Supp. 2d 7, 9 (D.D.C. 2011), *aff'd*, 463 F. App'x 4 (D.C. Cir. 2012).

himself, cannot claim ignorance of this rule—he cited Rule 15 in his petition for judicial review. To repeat, Muir's petition never mentioned any SOPs.[3]

The law of our circuit is that a petitioner's failure to specify an "order" in compliance with Rule 15(a)(2)(C) deprives our court of jurisdiction to review that order. *See City of Benton v. Nuclear Regul. Comm'n*, 136 F.3d 824, 826 (D.C. Cir. 1998) (per curiam); *John D. Copanos & Sons, Inc. v. FDA*, 854 F.2d 510, 527 (D.C. Cir. 1988); *Small Bus. in Telecomms. v. FCC*, 251 F.3d 1015, 1022 (D.C. Cir. 2001). Our opinion in *City of Benton* added that the "jurisdictional requirements of Rule 15(a) may not be waived." 136 F.3d at 826 (citing *Gottesman v. INS*, 33 F.3d 383, 388 (4th Cir. 1994)).

---

[3] Muir's "contemporaneous filings" also failed to notify the government of the order being challenged. *See Small Bus. in Telecomm. v. FCC*, 251 F.3d 1015, 1019 (D.C. Cir. 2001). Muir filed his petition on December 14, 2022. Fifteen days later, on December 29, he filed the Docketing Statement, Statement of Issues, and Underlying Decision from which Petition Arises. None of these filings mentioned the SOPs. The filings merely reiterated Muir's objection to TSA's promulgation of 49 C.F.R. § 1540.107(d) and DHS's order certifying the AIT devices.

The majority excuses Muir as a "pro se litigant" unable to identify the "nonpublic" SOPs. Majority Op. at 15. But Muir knew of the SOPs when he filed his petition in this court in December 2022. In January 2021, the District Court for the Central District of Illinois dismissed one of Muir's suits because "TSA's screenings are conducted pursuant to [the SOP] . . . and challenges to the SOP . . . lie within the exclusive jurisdiction of the courts of appeals." *Muir v. TSA*, 2021 WL 231733, at *11 (C.D. Ill. Jan. 22, 2021). Muir then discussed the SOPs in his Seventh Circuit brief in 2021. *See* Brief for the Appellant at 13, *Muir v. TSA*, 857 F. App'x 251 (7th Cir. 2021) (No. 21-1312), ECF No. 15.

The next problem with part III.C of the opinion is this. Section 46110(a)—the provision Muir invoked to establish our jurisdiction—requires a petition for review to be filed within 60 days of issuance of the "order." Our court has held that "simpl[e] ignorance of the order" will not excuse noncompliance. *Matar v. TSA*, 910 F.3d 538, 542 (D.C. Cir. 2018) (quoting *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 521 (D.C. Cir. 2011)). It is one thing if a person files his petition challenging an order after the 60-day deadline expired. Section 46110(a) has an escape valve for those who have "reasonable grounds" for delay. The built-in assumption of § 46110(a) is that the person, at some time after the 60 days had run, filed a petition for review of the "order." Muir was not late in filing. The problem for him—and the majority—is not with delay. It is that he did not, and still has not, filed any § 46110(a) petition objecting to an SOP.

The third jurisdictional defect in the majority's analysis is as follows. The majority excuses Muir from his failure to exhaust administrative remedies because "Muir's prior attempts at procuring an accommodation . . . were exercises in futility." Majority Op. at 16. What "prior attempts"? The majority has only one "attempt" in mind. That is the single complaint Muir lodged with the DHS Office for Civil Rights and Civil Liberties on December 15, 2019, three years before the events at the Florida airport described in his petition for judicial review in this case. Majority Op. at 8. This Office—CRCL—responded to Muir's complaint in a January 2020 letter. The letter stated that after reviewing the information Muir "provided, CRCL has recorded it in our database." Muir Reply Br. Addendum at 42. CRCL took no further action and Muir considered his complaint as having been "denied." Muir Reply Br. at 17.

The DHS regulation governing complaints like Muir's—6

C.F.R. § 15.70(d)—requires claims of disability discrimination to be filed within 180 days of the discriminatory conduct. Muir's complaint alleged discrimination at two airports in August 2018. He did not file his complaint with CRCL until November 1, 2019, many months out of time.

More important, CRCL's letter was not "final agency action" subject to judicial review. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022). It was only an intermediate determination. If Muir was dissatisfied with CRCL's response, he had a right to take an administrative appeal within 60 days.[4] In such an appeal, it is "the Officer for Civil Rights and Civil Liberties, or designee thereof, *who will issue the final agency decision* which may include appropriate corrective action to be taken by the Department." 6 C.F.R. § 15.70(i) (emphasis added).

But Muir never filed an administrative appeal regarding his November 2019 complaint. In other words, he did not then exhaust his administrative remedies.[5] And so the majority opinion is clearly mistaken in excusing Muir from having to present any administrative complaint whatsoever before

---

[4] "Appeals of the findings of fact and conclusions of law or remedies must be filed by the complainant not later than 60 days after receipt from the Department of the letter" denying the complaint. 6 C.F.R. § 15.70(h).

[5] *See, e.g., Smith v. Blue Cross & Blue Shield*, 959 F.2d 655, 659 (7th Cir. 1992) (requiring litigants challenging agency action to "show that it is certain that their claim will be denied on [administrative] appeal, not merely that they doubt an appeal will result in a different decision"). Our court cited this portion of *Smith* with approval in *Tesoro Refin. & Mktg. Co. v. FERC*, 552 F.3d 868, 874 (D.C. Cir. 2009).

pursuing his Rehabilitation Act claim in this court.[6]  There is no telling how the CRCL Officer would have ruled in 2020 had Muir appealed, and still less is there any way to know how he would have been treated if he had filed an administrative complaint in 2022.  The majority therefore erred in applying the futility exception of exhaustion.  That exception is "quite restricted," *Comm. of Blind Vendors of D.C. v. District of Columbia*, 28 F.3d 130, 133 n.5 (D.C. Cir. 1994), and is confined to situations when resort to administrative remedies would be "'clearly useless,'" *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (quoting *Baxter v. Claytor*, 652 F.2d 181, 185 (D.C. Cir. 1981)); *see also Tesoro Refin. & Mktg. Co. v. FERC*, 552 F.3d 868, 874 (D.C. Cir. 2009).

---

[6] 49 U.S.C. § 46110(d) itself required Muir to exhaust his administrative remedies.  That section, and comparable provisions in the judicial review statute of many agencies, cannot be waived.  *See EEOC v. FLRA*, 476 U.S. 19, 23 (1986).